1  SCHNEIDER WALLACE
   COTTRELL KONECKY LLP
2  Matthew S. Weiler (SBN 236052)
   Ryan M. Hecht (SBN 322396)
3  2000 Powell Street, Suite 1400
   Emeryville, California 94608
4  Tel: (415) 421-7100; Fax: (415) 421-7105
   mweiler@schneiderwallace.com
5  rhecht@schneiderwallace.com

6  Peter B. Schneider (Texas SBN 00791615)
   To apply for admission *Pro Hac Vice*
7  William M. Hogg (Texas SBN 24087733)
   To apply for admission *Pro Hac Vice*
8  3700 Buffalo Speedway, Suite 960
   Houston, Texas 77098
9  Tel: (713) 338-2560; Fax: (415) 421-7105
   pschneider@schneiderwallace.com
10 whogg@schneiderwallace.com

11 *Attorneys for Plaintiff and Class Members*

12                  **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14

15  TIFFANY BRITT, on behalf of all others        Case No. _____
    similarly situated,
16                                                **CLASS ACTION COMPLAINT FOR**
               Plaintiffs,                        **VIOLATIONS OF:**
17                                                **(1) CAL. CONSUMER LEGAL REMEDIES**
    vs.                                           **ACT;**
18                                                **(2) CAL. UNFAIR COMPETITION LAW;**
    CONTEXTLOGIC, INC.,                           **and**
19                                                **(4) DECLARATORY ACTION**
               Defendant.
20                                                     **CLASS ACTION**

21                                                   **DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

Plaintiff Tiffany Britt ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows upon personal knowledge as to her own acts and, as to all other allegations, upon information and belief, and investigation by counsel:

**INTRODUCTION**

1.     Plaintiff brings this class action on behalf of herself and a class of persons who purchased contact lenses without a prescription from a licensed medical professional sold on Defendant's online and mobile application(s) retail platform, Wish.com.

2.     According to Defendant's founder and CEO, Peter Szelczewski, "***We sell 5 million contacts a year[.] Someone's going to sleep in them.***"[1]

3.     The sale or distribution of contact lenses, even those that do not correct vision and are purely for cosmetic purposes ("plano contacts"), is prohibited by Federal and state law for persons and entities that are not licensed to sell, distribute, or facilitate the sale of contact lenses. Namely, it is prohibited for any person to offer contact lenses for sale without requiring the purchasers to present a valid prescription from a licensed medical professional. Defendant, through its online retail platforms, Wish.com and its various mobile phone applications, has sold and continues to offer contact lenses for sale without being licensed to sell or distribute contact lenses, and without requiring or even warning potential purchasers that a valid prescription is required to purchase contact lenses.

4.     Plaintiff was one such unsuspecting consumer, and purchased plano contact lenses from Wish.com without being prompted for a valid prescription prior to purchase. Indeed, Defendant did not even advise consumers like Plaintiff that they should seek to obtain a prescription for contact lenses prior to purchase. Defendant, in its first party capacity, represents to consumers that it is prohibited for any merchant to sell contact lenses on its website. This representation made and published by Defendant operates as a promise to Plaintiff and Class members that Wish.com will

---

[1] *See* "Meet the Billionaire Who Defied Amazon and Built Wish, the World's Most-Downloaded E-Commerce App," Forbes.com (Mar. 13, 2019) (available at: https://www.forbes.com/sites/parmyolson/2019/03/13/meet-the-billionaire-who-defied-amazon-and-built-wish-the-worlds-most-downloaded-e-commerce-app/#4d36d9d870f5 last visited May 19, 2020) (emphasis added).

CLASS ACTION COMPLAINT
*Britt, et al. v. ContextLogic, Inc.*

protect consumers from the sale of contact lenses, among other prohibited items, on its platform. Wish.com, however, readily allows these "prohibited" contact lenses to be sold on its website in high quantities from invisible sellers, with complete indifference as to whether such sales violate state and federal regulations. Plaintiff files this action, on behalf of herself and all others who purchased contact lenses through Wish.com's online retail platform, in order to remedy Defendant's illegal sales practices, to remedy Defendant's false/misleading advertising/marketing practices, to enforce consumer protections afforded to consumers by California law, and for injunctive relief.

5.     Defendant also attempts to surreptitiously trick consumers into unwittingly signing an unconscionable and unenforceable arbitration agreement prior to purchase. Plaintiff further seeks declaratory relief stating that Defendant's arbitration and class waiver agreement is unenforceable because of lack of consent, or alternatively because the arbitration agreement is procedurally and substantively unconscionable, and allow the present action to move forward on a class action basis in a judicial forum.

## **PARTIES**

6.     Plaintiff Tiffany Britt is an individual over the age of eighteen, and at all times relevant to this Complaint was a resident of the State of California, County of Orange. Plaintiff is a "consumer" under the California Civil Remedies Code § 1761(d).

7.     The putative National Class members are all people throughout the United States who have purchased contact lenses through Defendant's various online and/or mobile retail platforms, including but not limited to Wish.com, Wish, Cute, or any other similar online marketplace, within the three years preceding the filing of this Complaint until final resolution of this action

8.     The putative California Class members are all people throughout the State of California who have purchased contact lenses through Defendant's various online and/or mobile retail platforms, including but not limited to Wish.com, Wish, Cute, or any other similar online marketplace, within the three years preceding the filing of this Complaint until final resolution of this action.

9.     Plaintiff is informed, believes, and thereon alleges that Defendant ContextLogic, Inc.

1    is and at all times mentioned herein was, an internet marketing company headquartered at One

2    Sansome Street, 40th Floor, San Francisco, California 94104. Defendant operates several e-

3    commerce websites and/or mobile applications, including without limitation the websites located at

4    Wish.com and all subdomains thereto, Wish, Cute, and other similar retail platforms.

5        10.    At all material times, Defendant is a "person" as defined by California Business and

6    Professions Code § 1201[2] and California Civil Code § 1761(c).[3]

7                **SUBJECT MATTER JURISDICTION AND VENUE**

8        11.    This Court has federal question jurisdiction over the subject matter of Plaintiff's state

9    law causes of action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA").

10   Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because

11   the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and at least one of

12   the Defendants are citizens of different states.

13       12.    In the alternative, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)

14   because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is

15   between Plaintiff, a citizen of California, and Defendant, who is a citizen of a different state because

16   it is incorporated in Delaware.

17       13.    This Court has general personal jurisdiction over Defendant because Defendant does

18   business in California, is headquartered and/or has its principal place of business located in this

19   County, and because Defendant is authorized to do business in the State of California and is

20   registered with the California Secretary of State.

21       14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because

22   Defendant resides in this district.[4] Defendant is a Delaware corporation with its principal place of

23

24   [2] Pursuant to Cal. Bus. & Prof. Code § 1200: "Every provision of this chapter shall be liberally
     construed to protect the interests of all persons affected."

25   [3] Pursuant to Cal. Civ. Code § 1760, the CLRA "shall be liberally construed and applied to promote
26   its underlying purposes, which are to protect consumers against unfair and deceptive business practices
     and to provide efficient and economical procedures to secure such protection."

27   [4] Under 28 U.S.C. § 1391(c)(2): "an entity with the capacity to sue and be sued in its common name
     under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any

28

business in San Francisco, California, and is therefore a resident of this district and subject to general personal jurisdiction in this judicial district.

## **FACTUAL ALLEGATIONS**

15.    Defendant operates an online retail marketplace which markets, advertises, and sells a vast assortment of products from purported third-party sellers to consumers utilizing Defendant's proprietary website, the Wish.com online retail platform.

16.    Plaintiff created an account on Wish.com as early as March 2016 to purchase products sold on the Wish.com website. One category of the various products sold on Wish.com, and purchased by Plaintiff and Class members, are contact lenses. Plaintiff purchased contact lenses on Wish.com within the three years preceding this action.

17.    The Fairness to Contact Lens Consumers Act (15 U.S.C. § 7601 *et seq.* "FCLCA") gives consumers certain rights and imposes responsibilities on sellers of contact lenses. The FCLCA is incredibly expansive, and applies to "**[a]ny person** that **engages in** the manufacture, processing, assembly, **sale**, **offering for sale**, or **distribution** of contact lenses" and instructs that no person may "represent, by advertisement, **sales presentation**, **or otherwise**, that contact lenses may be obtained without a prescription." *See* FCLCA, 108 P.L. 164, 117 Stat. 2024, 2026, 108 P.L. 164, 2003 Enacted H.R. 3140, 108 Enacted H.R. 3140 (emphasis added).

18.    Similarly, the California statute covering the sale of contact lenses is broadly defined to make it a per se deceptive marketing practice for: "**[a]ny individual or entity who offers for sale** plano [i.e., non-corrective] contact lenses . . . to **represent by any means** that those lenses may be lawfully obtained without an eye examination or confirmation of a valid prescription, or may be **dispensed or furnished** to a purchaser without complying with [Cal. Bus. & Prof. Code § 2562]." Cal. Bus. & Prof. Code § 2543 (emphasis added). The "dispensed or furnished" language expansively describes the prohibition as applying not only to "sellers," but also to those who facilitate the sale or delivery of contact lenses without a prescription.

---

judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question ...]"

19.    Defendant sells contact lenses, including plano lenses, in a public forum, but does not require consumers to furnish or send a copy of a prescription as a prerequisite to selling the contact lenses to the consumers.[5]

20.    Defendant is not licensed to sell or distribute contact lenses to consumers. Likewise, the ostensible third-party merchants are not licensed to sell or distribute contact lenses to consumers. Defendant, nevertheless, lists contact lenses for sale on its online retail platform and does not advise, request, or require consumers to furnish a valid, verifiable prescription prior to completing the sale.

21.    Defendant, in its first party capacity, represents to consumers and the public at large that Wish.com prohibits any third party merchant from selling specific categories of products on Wish.com, and that such listings are an express violation of Wish.com's policies. One of the specifically "prohibited" items, as represented by Wish.com, is contact lenses.[6] As part of the promise to protect unwitting consumers from the sale of such prohibited items, and acknowledging that Wish.com's customers "may include children as young as 13 years of age[,]"[7] Wish.com promises consumers that it may censor or remove any content that "may be inappropriate or harmful for these customers."[8] In other words, Wish.com affirmatively states, in its first party speech capacity, that it will prohibit various categories of items from being sold on its platform, and one of those specifically prohibited items is contact lenses.

22.    "Third-party merchants" that sell items on Wish.com are virtually invisible to consumers. Wish.com does not allow consumers to contact these "merchants," and does not allow any direct communication between seller and purchaser whatsoever before or after completing the sale. The only information provided about a given seller is their "store" name, the year they started

---

[5] As of April 16, 2020, Defendant still lists contact lenses for sale on Wish.com, although Defendant allows the advertising for such contact lenses to surreptitiously be hidden within the listings for other ancillary cosmetic products, such as eyelash extensions and the like that include plano contacts with the purchase.

[6] *See* https://merchantfaq.wish.com/hc/en-us/articles/205211777-Prohibited-Product-Listings (last visited Apr. 16, 2020).

[7] *Id.*

[8] *Id.*

selling on Wish.com, the seller's overall store rating in a percentage format (i.e., "75% positive" and a five-star rating system), customer reviews, and the other products sold by the seller on Wish.com.

23.     In other words, a consumer who visits Wish.com is provided no means to (1) verify who the merchant is or where the merchant is located, (2) ask the merchant questions about the products sold on its Wish.com "storefront," or (3) conduct any due diligence about the merchant prior to purchase.

24.     The inherent secrecy built into Wish.com's "merchant" system, therefore, blurs the line of what would otherwise be a true "third party marketplace" transaction, since consumers are precluded from actually interacting with the supposed third-party merchants in any meaningful way prior to making a purchase. Importantly, consumers are left with no viable way to hold the third-party "merchants" liable in the event of illegal activity. This "black box system" was developed and instituted by Defendant, and transforms any supposed "third party marketplace" format into a direct sale format, where Wish.com sorts, advertises, and sells items direct to consumers and the "third party merchants" are merely the manufacturers/distributors that Wish.com calls upon to fulfill the orders.

25.     Once a consumer purchases the contact lenses using Defendant's online retail platform, Defendant finalizes the sale through one of these third-party vendor (generally a vendor from Asia), issues an order number, and sends a confirmation email to the consumer. These confirmation emails sent by Wish.com generally include a tracking number, where the consumer can track the delivery of their Wish.com purchase.

26.     Plaintiff, like all other Class members, relied on the representations and omissions made on Wish.com's online retail platform regarding the sale of contact lenses, namely the omissions/nondisclosures by Defendant that Wish.com prohibits certain categories of items from being sold on its website. Plaintiff and Class members relied on the fact that, because Wish.com in fact *does* sell and allows merchants to sell contact lenses on its website, that these products must necessarily be excluded from the prohibited items list. The fact that consumers can easily and readily purchase contact lenses from Wish.com illustrates that Wish.com's "prohibited items" list constitutes

a false representation to consumers.

27.    Plaintiff has purchased contact lenses through Wish.com as early as 2016, and has made subsequent purchases of contact lenses through Wish.com between January, March, April, and June of 2019. Plaintiff purchased the contact lenses through the Wish app on her cell phone from within California, and the contact lenses were delivered to her home address in California.

28.    Despite the affirmative promises and representations made by Wish.com, contact lenses have been and are still routinely sold to consumers on Wish.com. Relying on the promises and representation that Wish.com does not allow certain prohibited items, and seeing contact lenses for sale on Wish.com, Plaintiff and Class members purchase contact lenses through Wish.com and are not alerted that these items are actually prohibited from being sold on Wish.com, nor are Plaintiff and Class members prompted to furnish or produce a prescription prior to completing the sale.

29.    Defendant advertises/markets the contact lenses for sale, transacts the purchases, and facilitates the distribution of the contact lenses bought by Plaintiff and the Class members. In turn, Plaintiff and the Class members expend money related to the purchase price of the contact lenses, applicable taxes, and shipping costs charged by Defendant.

## RULE 23 CLASS ACTION ALLEGATIONS

30.    Plaintiff brings causes of action as a class action on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure § 23. The Classes that Plaintiff seeks to represent is defined as follows:

**National Class:**

**All people throughout the United States who have purchased contact lenses through Defendant's online and/or mobile application retail platform(s), including but not limited to Wish.com, Wish, Cute, or any other similar online retail marketplace, within the three years preceding the filing of this Complaint until final resolution of this action.**

**California Class:**

**All people throughout the State of California who have purchased contact lenses through Defendant's online and/or**

**mobile application retail platform(s), including but not limited to Wish.com, Wish, Cute, or any other similar online retail marketplace, within the three years preceding the filing of this Complaint until final resolution of this action.**

31.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation, and the proposed class is easily ascertainable from Defendant's records.

32.     California Civil Code § 1781 expressly states that "[a]ny consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of [herself] and such other consumers to recover damages or obtain other relief as provided for in Section 1780." Plaintiff brings a consumer protection cause of action pursuant to Cal. Civ. Code § 1780, as described below.

33.     <u>Numerosity</u>:  The potential members of the class are so numerous that individual joinder of all the members of the Class is impracticable. Plaintiff is informed and believes that the number of Class members, both in California and Nation-wide, exceeds 100. This volume makes bringing the claims of each individual member of the class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identities of the Class members will be determined from Defendant's records, as will the compensable damages suffered by each of them. As such, a class action is a reasonable and practical means of resolving these claims. To require individual actions would prejudice the Class members and Defendant.

34.     <u>Commonality</u>:  There are questions of law and fact common to Plaintiff and the Class members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, but are not limited to:

a.   Whether Defendant makes promises to consumers about which items sold on its retail platform are considered prohibited;

b.   Whether Defendant's promises about prohibited items on its retail platform are false, deceptive, and/or misleading;

c.   Whether Defendant is licensed to sell or distribute contact lenses to consumers;

d.  Whether Defendant facilitated and/or engaged in the marketing, sale, or distribution of contact lenses without a prescription;

e.  Whether Defendant improperly allowed contact lenses to be sold on its retail platform;

f.  Whether Defendant prevents consumers from contacting purported third-party merchants, inasmuch as preventing such contact transforms Defendant's retail platform from an ostensible "marketplace" to a direct sales platform;

g.  Whether Defendant violates the CLRA;

h.  Whether Defendant violates the California Unfair Competition Law;

i.  Whether Defendant was unjustly enriched at the expense of Class members;

j.  Whether Class members assented to Defendant's terms of service; and

k.  The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class as alleged herein.

35.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class members. Defendant's common course of conduct in violation of the law as alleged herein caused Plaintiff and the Class members to sustain the same or similar injuries and damages: the purchase of contact lenses from Defendant's retail platform. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class members.

36.  <u>Adequacy of Representation</u>:  Plaintiff seeks relief for state law consumer protection and related violations perpetrated by Defendant. In that sense, Plaintiff does not have any conflicts of interest with other Class members and will prosecute the case vigorously on behalf of the Class. Counsel representing Plaintiff is competent and experienced in litigating complex cases and large class actions, including consumer protection cases. Plaintiff will fairly and adequately represent and protect the interests of the Class members.

37.  <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Class members is not practicable, and questions of law and fact common to the Class predominate over any questions

affecting only individual members of the Class. Each proposed Class member has been damaged and is entitled to recovery by reason of Defendant's illegal practices, deceptive marketing schemes, and false representations. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

38.     In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class which would establish incompatible standards of conduct for Defendant.

39.     If each individual Class member were required to file an individual lawsuit, Defendant would necessarily gain an unconscionable advantage because Defendant would be able to exploit and overwhelm the limited resources of each member of the Class with Defendant's vastly superior financial legal resources.

40.     Requiring each individual Class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Class members who would be disinclined to pursue these claims against Defendant because the individual damages at issue are less than the cost of filing suit. In general, contact lenses purchased from Defendant cost in the range of $1 to $10 per contact lens, plus shipping. For the vast majority of individual consumers, it makes little sense to file a lawsuit where the cost of filing will exceed the potential recovery.

41.     This is the very reason that Civil Code § 1781 expressly requires class action treatment for consumer protection lawsuits like the present case. Specifically, the "court shall permit [an action under Section 1780] to be maintained on behalf of all members of the represented class" if the conditions described above are met. Cal. Civ. Code § 1781(b). Accordingly, class treatment is appropriate and reasonable here.

/ / /

/ / /

### FIRST CAUSE OF ACTION
#### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
#### (Cal. Civ. Code §§ 1750 *et seq.*)

42. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

43. Plaintiff brings this action pursuant to the CLRA, which provides that enumerated "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale … of goods … to any consumer are unlawful," CLRA § 1770, and that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain," various forms of relief, including damages and injunctive relief. Cal. Civ. Code § 1780.

44. Plaintiff was deceived by Defendant's unlawful practices as described above, which include advertising directed at Plaintiff, promises to Plaintiff that prohibited items would not be allowed to be listed for sale on Wish, allowing prohibited items to be listed for sale and facilitating such "prohibited" sales, and failing to disclose the statutory requirement that Plaintiff obtain a prescription from an optometrist or other healthcare professional before purchasing the contact lenses. Such promises and omissions are false and/or misleading given the requirements under the FDA, FCLCA, and California state law that retailers such as Defendant are not allowed to sell contact lenses without a valid, written prescription.

45. Defendant's actions, representations, omissions, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that have resulted in the sale of goods to consumers.

46. Defendant marketed, sold, and distributed contact lenses through their online retail platform based in California.

47. Defendant represented to consumers that it would prohibit the sale of certain categories of goods from being sold on Wish.com, specifically including contact lenses.

48. Plaintiff and Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

49. Contact lenses were and are "good[s]" within the meaning of Cal. Civ. Code § 1761(a).

50.    It is illegal for any person to engage in the processing, sale, offering of sale, or distribution of contact lenses, and it is likewise prohibited for any person to "represent, by advertisement, sales presentation, or otherwise, that contact lenses may be obtained without a prescription." *See* FCLCA, 108 P.L. 164, 117 Stat. 2024, 2026, 108 P.L. 164, 2003 Enacted H.R. 3140, 108 Enacted H.R. 3140.

51.    Likewise, it is a per se deceptive marketing practice for "[a]ny individual or entity who offers for sale plano [i.e., non-corrective] contact lenses . . . to represent by any means that those lenses may be lawfully obtained without an eye examination or confirmation of a valid prescription, or may be dispensed or furnished to a purchaser without complying with [Cal. Bus. & Prof. Code § 2562]." Cal. Bus. & Prof. Code § 2543.

52.    Defendant violated the CLRA by engaging in at least one of the following practices proscribed by Cal. Civ. Code § 1770(a) in a transaction with Plaintiff and the Class members that resulted in the sale of contact lenses:

(2)    Misrepresenting the source of the contact lenses;

(5)    Representing that Wish.com has a sponsorship, approval, status, affiliation, or connection that Wish.com does not have;

(7)    Representing that the contact lenses are of a particular standard, quality, or grade, if they are of another;

(9)    Advertising the contact lenses with intent not to sell them as advertised;

(14)    Representing that a transaction involves rights or obligations that it does not have or involve, or that are prohibited by law; and/or

(16)    Misrepresenting that the contact lenses have been supplied in accordance with a previous representation when they have not.

53.    As such, Defendant's conduct constitutes unfair methods of competition and unfair/fraudulent acts or practices because Defendant promises to consumers that it will not allow contact lenses to be sold on Wish.com, but nonetheless allows contact lenses to be sold on Wish.com on a wide and reckless scale. This representation constitutes a false promise made by Wish.com, in

its first party speaking capacity, to consumers that is belief by Defendant's common course of conduct.

54.     Further, Defendant does not sell, and intends not to sell, contact lenses in accordance with Federal and state law requiring a prescription be furnished prior to sale. Defendant further fails to provide warnings that contact lenses may have side effects, or may otherwise cause eye injuries. By failing to disclose the prescription requirement or otherwise warn consumers that contact lenses may have side effects, Defendant's representations and advertisements are deceptive, false and misleading in light of the omissions of material facts as described above.

55.     The omitted information and false promises as described herein would have been material to a reasonable consumer in his or her decision as to whether to purchase the contact lenses, whether to get a prescription, and/or whether to purchase the contact lenses at the price at which they were offered on Wish.com's online retail platform.

56.     Defendant had a duty to disclose truthful information to Plaintiff and other consumers like Plaintiff. First, Defendant is not allowed to sell contact lenses without a prescription. Second, Defendant promised consumers that it would not allow prohibited items to be sold on Wish.com. While Defendant's sale of contact lenses without a prescription to Plaintiff was per se unreasonable, at the very least Defendant is obligated to warn consumers of the potential side effects of medical devices sold on Defendant's online retail platform. Disclosure of such omitted information is necessary to avoid the false impression that contact lenses sold without a prescription are safe for over-the-counter purchase, or that there is no need to seek the opinion of a medical professional prior to using contact lenses.

57.     Moreover, Defendant provided Plaintiff and Class members with contact lenses that did not match the quality portrayed by Defendant's advertising.

58.     As a result, Plaintiff has suffered irreparable harm, and her injuries were proximately caused by Defendant's conduct as alleged herein.

59.     As a direct and proximate result of Defendant's CLRA violation, Plaintiff is entitled to injunctive relief under this claim.

**SECOND CAUSE OF ACTION**
**CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

60.    Plaintiff incorporates all allegations contained in the paragraphs above.

61.    California's Unfair Competition Law (UCL) prohibits any "unlawful," "unfair," or fraudulent business act or practice and any false or misleading advertising.

62.    In the course of conducting its business, Defendant committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating the FCLCA, Cal. Bus. & Prof. Code § 2543, and the common law.

63.    Plaintiff reserves the right to allege other violations of law which constitute other unlawful business acts or practices. Upon information and belief, such conduct is ongoing and continues to this date.

64.    Defendant's actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engaged in deceptive and false advertising, and misrepresents/omits material facts regarding the contact lenses sold on Defendant's online retail platform without a prescription, and thereby offends an established public policy, namely the California law prohibiting the sale of contact lenses without a prescription, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. This conduct constitutes violations of the unfair prong of the California Business and Professions Code §§ 17200, *et seq.*

65.    Business and Professions Code §§ 17200 *et seq.* also prohibits any "fraudulent business act or practice."

66.    Defendant's actions, claims, nondisclosures, and misleading representations, as alleged above, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.* Namely, Defendant represented to consumers that it would not allow prohibited items to be sold on Wish.com, listing contact lenses specifically as one of the prohibited items, and yet allowed contact lenses to be sold on Wish.com on a wide scale.

67.    Further, Defendant fails to disclose that retailers/sellers like Defendant are not allowed, by law, to engage in or otherwise facilitate the sale of contact lenses without a prescription. The fact that Defendant sells contact lenses without a prescription anyway, and fails to alert consumers that contact lenses should only be purchased after the consumer gets a prescription from a licensed medical professional, gives the false impression that the contact lenses are not prohibited by Wish.com for sale, and that sales "over-the-counter" by Defendant are inherently safe.

68.    There are reasonable available alternatives to further Defendant's legitimate business interests other than the conduct described herein, namely a prompt that requires consumers like Plaintiff to submit a prescription before being able to complete a sale for contact lenses.[9]

69.    As a result of Defendant's false marketing, including false promises and the deceptive omissions as detailed herein, Plaintiff and Class members are in fact harmed. If Defendant had upheld its promise to actually prohibit the sale of contact lenses, and/or disclosed the information discussed above about the requirement of needing a prescription or the potential side effects of contact lenses, and otherwise been truthful with consumers, Plaintiff and Class members would not have purchased the contact lenses through Defendant's online retail platform.

70.    As a result of Defendant's unlawful, unfair, and fraudulent practices, Plaintiff and Class members suffer injuries in fact and have lost money.

71.    As a result of its deception, Defendant is able to reap unjust revenue and profit in violation of the UCL.

72.    As a result of Defendant's conduct in violation of the UCL, Plaintiff and Class members have been injured as described herein in amounts to be proven at trial, because Plaintiff and Class members purchased the contact lenses in relying on Wish.com's promise to disallow prohibited items for sale, and without full disclosure of the material facts discussed above.

---

[9] For example, other online retailers such as Wal-Mart also sell plano contact lenses online, but Wal-Mart's website notes that "All color contact lenses require a prescription but even if you don't need vision correction, ask your doctor about 0.00, or plano contacts, so you can get the benefit of changing your eye color without a corrective prescription[,]" and prompts the buyer to furnish a prescription prior to allowing the purchase to be completed. *See generally*, https://walmartcontacts.com/ (last visited Jan. 2, 2020).

73.    Plaintiff and Class members are entitled to injunctive relief, compensatory damages, and all other such relief the Court deems appropriate under this claim.

### THIRD CAUSE OF ACTION
#### DECLARATORY ACTION

74.    Plaintiff incorporates all allegations contained in the paragraphs above.

75.    Defendant's website, Wish.com, ostensibly includes a terms of service for customers, which contains a section that requires consumers to resolve any and all disputes with Wish.com through individualized arbitration, which ostensibly requires consumers to waive their Constitutional right to a jury trial as well as their statutory right to pursue consumer claims on a class action basis.

76.    Plaintiff first enrolled with Wish.com sometime in 2016, and made contact lens purchases through Wish.com's website and/or mobile application at various times from January to June of 2019 via Wish.com's mobile phone application.

77.    On November 9, 2018, Judge Donato of the United States District Court for the Northern District of California issued a ruling that Defendant's terms of service, and the purported arbitration agreement found within, were a "browsewrap agreement," and determined the arbitration and class waiver provisions in the terms of service did not suffice to show that the parties mutually assented to the terms of service, or otherwise to submit any and all claims to arbitration. *See Motley v. ContextLogic, Inc.*, Case No. 3:18-CV-02117-JD, 2018 WL 5906079 (N.D. Cal. Nov. 9, 2018). In other words, the terms and service were deemed insufficient to create an agreement to arbitrate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

78.     Shortly after Judge Donato's ruling, Defendant made slight cosmetic changes to its website, ostensibly in an effort to ensure its browsewrap arbitration agreement and limitations of liability, would pass muster. Upon information and belief, Wish.com included the following "warning" on its log-in page, in 8-point, light gray-colored font: "By clicking 'Login' . . . you agree to the Wish Terms of use and Privacy Policy."



(Source: https://www.wish.com/, last visited Feb. 10, 2020) (alteration added in red).

79.     It is unclear to Plaintiff exactly when Defendant made these cosmetic changes, but it is apparent that Defendant did so in a bare-minimum effort to deceive unwitting consumers to

unwittingly waive their statutory and Constitutional rights, as well as trap them in an adhesive agreement in an attempt to improperly limit Defendant's liability for conduct it knows to be unlawful. This "terms of use" warning does not alert consumers that they may be waiving certain rights or agreeing to limitations of liability if they proceed. Indeed, Plaintiff did not see, read, or knowingly consent to any such agreements found in the "terms of use and privacy policy" before she logged in to purchase contact lenses on Wish.com, and Defendant is unable to prove otherwise.

80. These changes do nothing to address the procedural and substantive unconscionability of the purported arbitration agreement found within the terms of use and privacy policy.

**A. Defendant's purported arbitration provision is an improper "sign-in wrap" agreement.**

81. Contracts formed on the internet come primarily in two flavors: "clickwrap" or "click-through" agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and "browsewrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 428-30 (2d Cir. 2004)).

82. A third flavor of these online agreements are "sign-in wraps," which describe a hybrid between clickwrap and browsewrap agreements. *See, e.g., Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 399-401 (E.D.N.Y. 2015). This type of agreement "does not require the user to click a box showing acceptance of the terms of use in order to continue, but rather notifies the user of the existence and applicability of the website's terms of use when proceeding through the website's sign-in or login process." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 U.S. Dist. LEXIS 192814, at *7 (S.D.N.Y. Nov. 20, 2017) (citing *Berkson*, 97 F. Supp. 3d at 399).

83. Prior to the changes made pursuant to the *Motley* decision, Wish.com's Terms of Service and the purported arbitration provision did not illustrate a mutual assent between the parties to submit to arbitration. After the changes to Wish.com pursuant to the *Motley* decision, it is an open question whether Wish.com's "sign-in wrap" agreement constitutes mutual assent, and whether the terms of the purported arbitration agreement are unconscionable.

**B. Legal Standard**

84.     It is axiomatic that arbitration is a matter of contract, and thus "'a party cannot be required to submit any dispute which he has not agreed so to submit.'" *Sanford v. MemberWorks, Inc,*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting *AT&T Techs., Inc. v. Comms. Workers*, 475 U.S. 643, 648 (1986)). As such, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court," the party asserting a claim should be compelled to arbitration must first prove the existence of "an express, unequivocal agreement to that effect." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 935 F.2d 1136, 1140-41 (9th Cir. 1991).

85.     Thus, the liberal policy in favor of arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, only applies if the party moving to compel arbitration first establishes the existence of a valid, enforceable agreement to arbitrate.

86.     Whether a contract exists is determined according to "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under "basic principles of California contract law," the "essential elements for a contract are (1) 'parties capable of contracting;' (2) their 'consent;' (3) a 'lawful object;' and (4) 'sufficient cause or consideration.'" *Norcia v. Samsung Tel. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting Cal. Civ. Code § 1550). Of "paramount consideration" to the analysis is "the parties' objective intention at the time of contracting." *Porreco v. Red Top RV Center*, 216 Cal. App. 3d 113, 119 (1989).

87.     In determining whether a party who seeks to enforce a purported arbitration agreement can prove these essential elements, the court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist.*¸925 F.2d at 1140-41. "If there is doubt as to whether such an agreement exists," then the party seeking to enforce a purported arbitration agreement has failed to carry its burden and thus arbitration must be denied. *Id.*

88.     Here, Defendant cannot establish the existence of a binding agreement to arbitrate between Plaintiff and Defendant.

/ / /

**C.  There is no mutual assent between the Parties to be bound by the Terms of Service.**

89.    Plaintiff never objectively intended to agree to the Terms of Service during her initial enrollment with Wish.com—the "paramount consideration" for the Court at issue here. *Porreco*, 216 Cal. App. 3d at 119; *Motley*, 2018 WL 5906079, at *1 (holding there was no mutual assent as to Wish.com's terms of service and arbitration provision as they appeared on Wish.com's website of October 2017). There is no evidence of any agreement to enter into the Terms of Service, no evidence that Plaintiff was even aware of the purported arbitration agreement buried deep within those Terms of Service, and Defendant's ostensible "notice" of the purported arbitration agreement, class waiver, or limitations of liability is nowhere to be found on Wish.com's log-in and order pages.

90.    As a matter of *res judicata*, Plaintiff did not agree to anything related to arbitration or class waiver when she enrolled in Wish.com in 2016. *See Motley*, 2018 WL 5906079. Nor did Plaintiff affirmatively agree to anything related to the Terms of Service, limitations of liability, class waiver, or arbitration when she completed her orders with respect to the contact lenses. Indeed, as shown above, the sum total of information requested by Defendant, and thus provided by Plaintiff, when she signed up and logged in was her username and password. Plaintiff never saw, never read, and never affirmatively signed, consented to, or clicked "I agree" on the terms of service.

91.    Thus, Plaintiff was in fact never presented with, notified about, nor did Plaintiff affirmatively assent to any limitations of liability, class waiver or arbitration terms when she signed up for an account or logged in to purchase the contact lenses.

**D.  Plaintiff never assented to the Terms of Service at any time after her initial enrollment.**

92.    As a threshold matter, the mere use of a mobile application or website displaying a hyperlink agreement in fine print is plainly insufficient, by itself, to bind the user to the hyperlinked agreement, particularly where (as here) the user never agreed to be bound by any terms or conditions during the initial enrollment process on the website. *See, e.g., Norcia v. Samsung Telecomms. Am., LLC*, No. 14-cv-00582-JD, 2014 WL 4652332, at *9 (N.D. Cal. 2014) (rejecting argument that use of the defendant's "webpage," which "contained links to . . . the arbitration provision," could bind the plaintiff in absence of initial contract), *aff'd* 845 F.3d at 1283; *Savetsky v. Pre-Paid Legal*

*Services, Inc.*, No. 14-03514 SC, 2015 WL 604767, at \*5 (N.D. Cal. 2015) (holding no assent by use of website because no clear notice that its terms could "be adopted through" mere use of the website.). A court of competent jurisdiction has already ruled that there was no mutual assent between Wish.com's users and Defendant with respect to the terms of use as they existed prior to 2017. *See Motley*, 2018 WL 5906079. Plaintiff first enrolled with Wish.com in 2016, prior to the *Motley* opinion and prior to the cosmetic changes made by Defendant following *Motley*. Defendant is therefore bound by the decision with respect to users who enrolled prior to the cosmetic changes made to Wish.com following that decision.

93.    Moreover, to the extent Defendant might argue that Plaintiff is somehow bound by revised or modified webpages on Wish.com, or revisions to the Terms of Service, issued by Defendant after Plaintiff's initial enrollment with Wish.com in 2016, this argument fails for several reasons. First, only parties to an agreement can be bound by subsequent modifications to an agreement, and even then, in order for subsequent modifications to be binding, the original agreement must have put the other party on notice of the possibility of subsequent binding modifications. *See Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. 1972); *see also Porreco*, 216 Cal. App. 3d at 119 (under California law, contract formation is governed by "[t]he mutual intention of the parties at the time the contract is formed"); *see also, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 115, 126 (2d Cir. 2012) (citing *Windsor Mills* and denying defendant's motion to compel arbitration, finding subsequently-added terms nonbinding because there was nothing in the "prior relationship between the parties that would have suggested that terms sent . . . after the initial enrollment were to become part of the contract"); *cf., e.g., Cory v. Golden State Bank*, 95 Cal.App.3d 360, 367 (Cal. 1979); *India Paint Co. v. United Steel Prod. Corp.*, 123 Cal. App. 2d 597, 608-609 (Cal. 1954); *Amer. Aero. Corp. v. Grand Cen. Aircraft Co.*, 155 Cal. App. 2d 69, 79 (Cal. 1957). In this case, Plaintiff never assented to and was thus never a party to the Terms of Service when she enrolled in 2016, and thus could never have become bound by any revisions to Defendants' website or to the Terms of Service itself. Moreover, even if Plaintiff had entered into the Terms of Service in 2016, there is no evidence that Plaintiff was notified at that time that she was entering a

contract subject to undisclosed, subsequent terms that could, without warning, be materially revised each time she used Defendant's website. Accordingly, any modifications Defendant made to its website or the Terms of Service had no impact on Plaintiff or Class members whatsoever. *See Windsor Mills*, 25 Cal. App. 3d at 993.

94. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Thus, companies like Defendant that seek to enforce the terms of an online take-it-or-leave-it contract bear the burden of establishing, on undisputed facts, that the provisions of the contract were clearly communicated and accepted. *See Nguyen*, 763 F.3d at 1179 (explaining that the "onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," for "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound"). Determining "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms" is "a fact-intensive inquiry," *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016), which "depends heavily" on "the design and content" of the relevant webpages or mobile-phone applications. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016); *see also Nguyen*, 763 F.3d at 1177-78. Based on the Terms of Service as Defendant presented them prior to 2017, and even after Defendant subsequently modified the presentation of those Terms of Service, it is unable to make such a showing.

95. Here, the Court should declare as a matter of law that Plaintiff and Class members who signed up for an account with Wish.com prior to the changes instituted by Wish.com are not subject to the Terms and Conditions based upon the *Motley v. ContextLogic, Inc.* ruling. Moreover, the Court should declare that Defendant is unable to establish, even after instituting the cosmetic changes to its sign-in page following *Motley*, that the Terms and Service containing the limitations of liability, class waiver, and arbitration provision were ever "clearly" and effectively communicated to Wish.com's users, or that those users ever accepted them, merely while utilizing Defendant's mobile

applications or website (1) to create an account, (2) to sign into their accounts, or (3) to place orders or check the status of their orders.

**E. Even if Plaintiff assented to the Terms of Service, the arbitration and class waiver provisions are unconscionable and therefore unenforceable.**

I.     *The arbitration provision is unconscionable*.

96.     "Under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010). "[T]he core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013). "While both procedural and substantive unconscionability are required, 'they need not be present to the same degree.'" *Colvin v. NASDAQ OMX Grp., Inc.*, 2015 WL 6735292, at *3 (N.D. Cal. 2015) (quoting *Pokorny*, 601 F.3d at 996). "Instead, a sliding scale is applied, such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.*

97.     The procedural unconscionability elements "focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate." *Pokorny*, 601 F.3d at 996. The substantive unconscionability element focuses on whether the actual terms of the agreement created a "one-sided" result. *See Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

98.     Here, the arbitration provision found within the Terms of Service is both procedurally and substantively unconscionable. The provision is procedurally unconscionable because it was drafted by Defendant (the stronger party), without affording Plaintiff or Class members (the weaker parties) any opportunity to negotiate its terms. Indeed, the entire Terms of Service, within which contains the arbitration provision, was drafted by Defendant, a large, well-funded corporate entity with superior bargaining power, and imposed upon Plaintiff and Class members, who are non-lawyer

consumers who lack any familiarity with contract law, on a take-it-or-leave-it basis via inconspicuous website hyperlinks. Such factual circumstances are, without more, sufficient to establish procedural unconscionability. *See Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *9 (N.D. Cal. 2016) ("Under California law, contracts of adhesion are procedurally unconscionable"). Egregiously, Defendant fails to even "attach the arbitration rules" to the Terms of Service, thereby "den[ying] [Plaintiff and Class members] 'a fair opportunity to review the full nature and extent of the non-binding conciliation and binding arbitration process to which [they] would be bound.'" *Vargas*, 2016 WL 946112, at *10 (quoting *Pokorny*, 601 F.3d at 996-97). "This failure 'multipl[ies] the degree of procedural unconscionability.'" *Id.* In short, the Terms of Service and the purported arbitration provision found within is a hidden, one-sided, adhesion contract that Defendant would attempt to spring on unwitting consumers. Procedural unconscionability is egregiously high in this instance.

99.     The purported arbitration provision is also substantively unconscionable, for several reasons. "An evaluation of unconscionability is highly dependent on context." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 911 (2015) (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965)). The doctrine often requires inquiry into the "commercial setting, purpose, and effect" of the contract or contract provision. *See* Cal. Civ. Code § 1670.5, subd. (b). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Sanchez*, 61 Cal. 4th at 912.

100.     First and foremost, the purported arbitration provision precludes class treatment of any kind. *See* Sec. 24.10, "Waiver of class . . . actions," available at https://www.wish.com/en-terms#section-25 (last visited Apr. 16, 2020) (requiring any arbitration be resolved "in an individual capacity, and not on behalf of, or as part of, any purported class, consolidated, or representative proceeding."). This means, if the purported arbitration provision were enforceable, it would force consumers to file individual arbitration demands. Context is important here: most items listed for sale on Wish.com are small-dollar value items, generally between $1 and $20. For example, the contact lenses sold to Plaintiff on Wish.com were listed for approximately $2.00 per contact, plus shipping of $3.00. This means, in order to recover the roughly $5.00 purchase for the illegal sale of

contact lenses, Plaintiff would be forced to spend hundreds, and potentially thousands, of dollars (discussed below) to initiate and litigate arbitration, all on an individualized basis. The Class members would be forced to do the same. The forced class action waiver in the purported arbitration provision is completely one-sided, since consumers have no monetary incentive to vindicate their rights in this context. The class action waiver provision likewise frustrates the legislature's express intent that consumer actions, like those at issue in this case, should be able to proceed on a class action basis. *See* Cal. Civ. Code § 1781 (stating that any consumer may bring an action on behalf of himself/herself as well as any other consumer who is similarly damaged under the CLRA for class certification).

101.    Second, and of equal importance, are the costs imposed by the purported arbitration provision. As described in Section 24.2.3 of the Terms of Service, "To the extent the filing fee for the arbitration exceeds the cost of filing a lawsuit, ContextLogic will pay the additional cost." Taken in context with the class action waiver, this means that if consumers wish to vindicate their rights, they would be forced to bring individualized claim in arbitration, and would be forced to pay, at minimum, costs up to the same costs of filing a lawsuit. The cost of filing an individualized, non-complex civil case in the Superior Court of California for San Francisco County is $450.[10] The cost of filing a civil case in the United States District Court for the Northern District of California is currently $400.[11] This means that if a consumer wanted to dispute the sale of a $10 item based on a consumer protection statute, he or she would (1) be precluded from bringing the consumer protection claim on a class basis, and (2) would be forced to pay either $400 or $450 to litigate an individualized claim worth approximately $10. This leaves consumers with no viable recourse from an economic standpoint.

---

[10] *See* The Superior Court of California, County of San Francisco, "San Francisco Civil Fee Schedule," available at: https://sfsuperiorcourt.org/sites/default/files/pdfs/Statewide%20Fee%20Schedule%20rev%201-6-20.pdf?1587061834278 (last visited Apr. 16, 2020).

[11] *See* Clerk's Office for the Northern District of California, "Court Fee Schedule Summary," available at: https://www.cand.uscourts.gov/about/clerks-office/court-fees/ (last visited Apr. 16, 2020).

102.    Here, because procedural unconscionability is so high, substantive unconscionability need not be as high to hold that the purported arbitration provision be deemed unenforceable as a matter of unconscionability. The ultimate effect of this one-sided arbitration provision results in a complete economic preclusion of individual consumers asserting their statutory protection rights. Defendant is therefore free to break all of the consumer protection laws that it wishes, knowing full well it is not worth it for consumers to spend hundreds of dollars on individualized arbitration proceedings over such small-value items sold on Wish.com.

II.    *The class action waiver provision is unenforceable under California law because it violates public policy.*

103.    As detailed above, Plaintiff seeks monetary and injunctive relief on behalf of all Class members pursuant to the CLRA and UCL. Under California law, "a provision in any contract—even a contract that has no arbitration provision—that purports to waive, *in all fora*, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 962 (2017).

104.    In *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019), the Ninth Circuit struck down an Arbitration Provision containing two limits: (1) a prohibition on the arbitrator from awarding "relief that would affect [people] other than [the plaintiff]," and (2) a prohibition on "arbitrat[ing] as a Class, collective, mass, private attorney general, or *representative* action." *Blair*, 928 F.3d at 831 (emphasis added). The *Blair* court found that these prohibitions together "preclude[d] the arbitrator from awarding public injunctive relief," and thus violated California public policy. *Id*.

105.    The same is true here. Wish.com's Terms of Service seeks to preclude representative actions in arbitration or outside of arbitration. *See* Sec. 24.10.1 ("ContextLogic and you agree to resolve any dispute in an individual capacity, and not on behalf of, or as part of, any purported class, consolidated, or *representative* proceeding" (emphasis added)) and Sec. 24.3 ("The arbitrator shall have the authority to award monetary damages and to grant *any non-monetary remedy or relief available to an individual* under applicable law, the arbitral forum's rules, and these Terms (including the Arbitration Agreement)." (emphasis added)). Taken together, these purported terms

preclude an arbitrator from awarding public injunctive relief. Under *Blair*, this Court must find that Defendant's class waiver and arbitration provisions violate California public policy, and are therefore unenforceable.

III.    <u>*Even if the Court severs the class waiver, the remaining arbitration provision is separately unconscionable.*</u>

106.    Even if the Court strikes the class waiver provision and the costs provision, the remaining arbitration provision is likewise substantively unconscionable. For example, even if a consumer wishes to file a claim in small claims court, they would still be required to file on an individualized basis and are not allowed to request "any type of equitable relief." *See* Sec. 24.2.5. Further, Defendant retains to right to change the purported arbitration terms in any way. *See* Sec. 24.7.2. And severability of any parts of the arbitration clause itself is "[s]ubject to" the class action waiver section, which means that severability of any provisions is entirely dependent on whether the class action waiver is severable. Taken together, these terms illustrate the purported arbitration and class waiver provisions are substantively one-sided and favors Defendant at the expense of consumers.

107.    The Court should therefore declare that, in the unlikely event the Court finds that Plaintiff assented to the Terms of Service, the Court should alternatively find the entire arbitration and class waiver provisions unconscionable and thus unenforceable. *See Ingle*, 328 F.3d at 1180.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of the Class members, requests the following relief:

1.    For an order certifying this case as a nation-wide class action pursuant to Rule 23;

2.    For an order certifying this case as a Class action for all California consumers pursuant to Rule 23;

3.    For an order enjoining Defendant from selling or allowing the sale of contact lenses of any kind on its online retail marketplace platform;

4.    For an order awarding Plaintiff and Class members compensatory relief, including but not limited to the purchase cost, taxes, shipping, and any fees associated with their

purchases of contact lenses from Defendant;

5.    For an order requiring Defendant to disgorge all profits obtained from the sale of contact lenses to Plaintiff and the Class members;

6.    For an order declaring that Defendant's purported arbitration agreement is unenforceable as against Plaintiff and the Class members for lack of mutual assent and/or because the arbitration agreement is substantively and procedurally unconscionable;

7.    For an award of reasonable attorneys' fees as provided by Code of Civil Procedure §1021.5, and/or any other applicable law;

8.    For all costs of suit;

9.    For interest on any penalties awarded, as provided by applicable law; and

10.    For such other and further relief as this Court deems just and proper.


Respectfully submitted,

Date: June 29, 2020

*/s/ Matthew S. Weiler*
Matthew S. Weiler
Ryan M. Hecht
Peter B. Schneider
William M. Hogg
SCHNEIDER WALLACE
COTTRELL KONECKY LLP

*Attorneys for Plaintiff and Class Members*

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to

3  a jury.

4                          Respectfully submitted,

5  Date: June 29, 2020

6                         */s/ Matthew S. Weiler*

7                         Matthew S. Weiler
Ryan M. Hecht

8                         Peter B. Schneider
William M. Hogg

9                         SCHNEIDER WALLACE
COTTRELL KONECKY LLP

10

11                        *Attorneys for Plaintiff and Class Members*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
*Britt, et al. v. ContextLogic, Inc.*