SCHNEIDER WALLACE
COTTRELL KONECKY LLP
Matthew S. Weiler (SBN 236052)
Ryan M. Hecht (SBN 322396)
2000 Powell Street, Suite 1400
Emeryville, California 96408
Tel: (415) 421-7100; Fax: (415) 421-7105
mweiler@schneiderwallace.com
rhecht@schneiderwallace.com

Peter B. Schneider (admitted *pro hac vice*)
William M. Hogg (admitted *pro hac vice*)
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel: (713) 338-2560; Fax: (415) 421-7105
pschneider@schneiderwallace.com
whogg@schneiderwallace.com

Attorneys for Plaintiff and Class Members

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

TIFFANY BRITT, on behalf of all others similarly situated,

        Plaintiffs,

vs.

CONTEXTLOGIC, INC.,

        Defendant.

Case No. 3:20-cv-04333-WHA

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**[Fed. R. Civ. P. 56]**

Date:    Thursday, November 19, 2020
Time:    8:00 a.m.
Dept:    Courtroom 12
Judge:  The Hon. William Alsup

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE OF MOTION ................................................................................................ 1

ISSUED PRESENTED ............................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

I.    INTRODUCTION ............................................................................................. 2

II.   LEGAL STANDARD ........................................................................................ 2

III.  FACTUAL BACKGROUND ........................................................................... 3

    A.  Mutual assent. ............................................................................................ 3

    A.  Unconscionability ..................................................................................... 4

IV.  ARGUMENT AND AUTHORITIES .............................................................. 6

    A.  As a matter of issue preclusion, Plaintiff never assented to or agreed to the Terms of Service as they existed before November 2018. ....................... 6

    B.  Defendant's cosmetic changes still do not provide evidence of mutual assent. ................. 9

    C.  Even if Plaintiff had assented to the Terms of Service, they are unconscionable and thus unenforceable as a matter of law. ......................................... 16

        1.  The Terms of Service are procedurally unconscionable. ........................... 17

        2.  The Terms of Service are substantively unconscionable. ......................... 18

           i.  The arbitration provision is wholly one-sided on its face. ................. 19

           ii.  The Terms of Service seek to shorten all limitations period to one year. ............. 21

           iii.  The Terms of Service seek to cap damages to $100 or the amounts paid by consumers within the 12-month period preceding the event giving rise to the legal claim at issue. ........................................ 21

           iv.  Taken together with these other provisions that attempt to limit Defendant's liability, the purported arbitration and class waiver constitutes a one-sided benefit in Defendant's favor. ........................ 22

           v.  The arbitration provision imposes undue costs that would prevent consumers from vindicating their rights on an individualized basis. ............. 23

           vi.  The class action waiver should be held unenforceable under California law because it violates public policy. ......................... 24

V.   CONCLUSION ............................................................................................... 25

1

## TABLE OF AUTHORITIES

**Cases**

*Al-Safin v. Circuit City Stores, Inc.*,
   394 F.3d 1254 (9th Cir. 2005) ........................................................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..................................................... 3

*Armendariz v. Foundation Health Psychare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ................................................................................................... 17, 20

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) .............................................................................. 9, 11

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   No. 17-CV-04570 (LAK) (KHP),
   2017 U.S. Dist. LEXIS 192814 (S.D.N.Y. Nov. 20, 2017) ................................... 9, 11, 12

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) ............................................................................................. 24

*Capili v. Finish Line, Inc.*,
   116 F. Supp. 3d 1000 (N.D. Cal. 2015) ............................................................................. 20

*Castillo v. CleanNet USA, Inc.*,
   358 F. Supp. 3d 912 (N.D. Cal. 2018) ............................................................................... 21

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013) ............................................................................................. 20

*Circuit City Stores, Inc. v. Adams*,
   279 F.3d 889 (9th Cir. 2002) ............................................................................................. 21

*Clark v. Bear Stearns & Co.*,
   966 F.2d 1318 (9th Cir. 1992) .............................................................................................. 8

*Colvin v. NASDAQ OMX Group, Inc.*,
   No. 15-cv-02078-EMC, 2015 WL 675292 (N.D. Cal. Nov. 4, 2015) ........................... 18, 20

*Concat LP v. Unilever, PLC*,
   350 F. Supp. 2d 796 (N.D. Cal. 2004) ................................................................................. 3

*Cox v. Ocean View Hotel Corp.*,
   533 F.3d 1114 (9th Cir. 2008) .............................................................................................. 3

*Cross v. Nat'l Union Fire Ins. Co.*,
   No. 2:19-cv-00787-KJM-DB, 2019 U.S. Dist. LEXIS 208356 (E.D. Cal. Dec. 2, 2019) ............... 3

*Cullinane v. Uber Technologies, Inc.*,
   893 F.3d 53 (1st Cir. 2018) ................................................................................................ 11

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ............................................................................................................. 6

-iii-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

*Fitz v. NCR Corp.*,
  118 Cal. App. 4th 702 (2004) .................................................................................... 20

*Gatton v. T-Mobile USA, Inc.*,
  152 Cal.App.4th 571, 61 Cal.Rptr.3d 344 (2007)................................................. 18, 19

*Gentry v. Superior Court*,
  42 Cal.4th 443, 64 Cal. Rptr. 3d 773, 165 P.3d 556 (2007) ...................................... 17

*Graham v. Scissor-Tail, Inc.*,
  28 Cal. 3d 807, 171 Cal. Rptr. 604, 623 P.2d 165 (1981) .......................................... 17

*Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*,
  549 Fed. Appx. 621 (9th Cir. 2013) .............................................................................. 3

*Howard v. City of Coos Bay*,
  871 F.3d 1032 (9th Cir. 2017) ....................................................................................... 8

*In Re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ......................................................................... 7

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ..................................................................................... 20

*Janjua v. Neufeld*,
  933 F.3d 1061 (9th Cir. 2019) ....................................................................................... 8

*Knutson v. Sirius XM Radio Inc.*,
  771 F.3d 559 (9th Cir. 2014) ....................................................................................... 16

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ....................................................................................... 6

*Lhotka v. Geographic Expeditions, Inc.*,
  181 Cal. App. 4th 816 (2010) ...................................................................................... 21

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) ............................................................................................... 22

*Long v. Provide Commerce, Inc.*,
  245 Cal. App. 4th 855 (2016) ...................................................................................... 16

*Magno v. The College Network, Inc.*,
  1 Cal.App.5th 277 (2016) ............................................................................................ 19

*McGill v. Citibank, N.A.*,
  2 Cal. 5th 945 (2017) ............................................................................................ 23, 24

*McKee v. Audible, Inc.*,
  No. 17-1941-GW(Ex), 2017 U.S. Dist. LEXIS 174278 (C.D. Cal. July 17, 2017)...... 22

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)........................................................................................... 12

-iv-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

1

*Motley v. ContextLogic, Inc.*,
   No. 3:18-cv-02117-JD, 2018 U.S. Dist. LEXIS 192447 (N.D. Cal. Nov. 9, 2018) ............... passim

2

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15,2017) ................................................ 15

3

4

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ................................................................................... 7, 9, 10, 14

5

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ............................................................................... 10, 13, 14, 15

6

7

*Norcia v. Samsung Tel. America, LLC*,
   845 F.3d 1279 (9th Cir. 2017) ............................................................................................ 6, 7

8

*OTO, L.L.C. v. Kho*,
   8 Cal.5th 111, 251 Cal.Rptr.3d 714, 447 P.3d 680 (2019) ............................................... 19

9

10

*Oyeniran v. Holder*,
   672 F.3d 800 (9th Cir. 2012) ................................................................................................ 8

11

*Porreco v. Red Top RV Center*,
   216 Cal. App. 3d 113 (1989) ............................................................................................... 6

12

13

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) ................................................................................................ 9

14

*Rosenthal v. Great Western Fin. Securities Corp.*,
   14 Cal. 4th 394 (1996) ...................................................................................................... 16

15

16

*Saika v. Gold*,
   49 Cal. App. 4th 1074 (1996) ............................................................................................ 22

17

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) ........................................................................................... 10

18

19

*Sonic-Calabasas A, Inc. v Moreno*,
   57 Cal.4th 1109 (2013) ................................................................................................ 18, 20

20

*Subcontracting Concepts (CT), LLC v. De Melo*,
   34 Cal. App. 5th 201, 245 Cal. Rptr. 3d 838 (2019) ........................................................ 17

21

22

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................................. 15

23

*Szetela v. Discover Bank*,
   97 Cal. App. 4th 1094 (2002) ............................................................................................ 22

24

25

*Talbot v. Lyft, Inc.*,
   Case No. CGC-18-566392,
   2018 Cal. Super. LEXIS 6553 (San Francisco Sup. Ct., Dec. 21, 2018) .......................... 15

26

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*,
   925 F.2d 1136 (9th Cir. 1991) ............................................................................................. 7

27

28

-v-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

*Vargas v. Delivery Outsourcing, LLC*,
No. 15-cv-03408-JST, 2016 U.S. Dist. LEXIS 32634 (N.D. Cal. Mar. 14, 2016) ........................ 18

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
187 Cal. App. 4th 634 (2010) ............................................................................................. 16

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ............................................................................................ 11

*Zuver v. Airtouch Communications*,
153 Wn.2d 293, 103 P.3d 753 (2004) ................................................................................ 22

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................................ 2

Cal. Bus. & Prof. Code § 17208 .......................................................................................... 21

Cal. Civ. Code § 1550 ........................................................................................................... 6

Cal. Civ. Code § 1750 ........................................................................................................... 2

Cal. Civ. Code § 1751 ......................................................................................................... 23

Cal. Civ. Code § 1752 ......................................................................................................... 23

Cal. Civ. Code § 1781 ......................................................................................................... 23

Cal. Civ. Code § 1783 ......................................................................................................... 21

**Other Authorities**

Heather Daiza, "Wrap Contracts: How They Can Work Better for Businesses and Consumers," 54
CAL. W. L. REV. 201 (2017) ................................................................................................ 15

Jonathan Obar et al., "The Biggest Lie on the Internet: Ignoring the Privacy Policies and Terms of
Service Policies of Social Networking Services," TPRC 44: The 44th Research Conference on
Communication, Information and Internet Policy, 2016 (June 1, 2018) ........................................ 15

Stacy-Ann Elvy, "Contracting in the Age of the Internet of Things: Article 2 of the UCC and
Beyond," 44 HOFSTRA L. REV. 839 (2016) .......................................................................... 15

Stephen Y. Chow, "A Snapshot of Online Contracting Two Decades After *Procd v. Zeidenberg*," 73
BUS. LAW. 267 (2018) ........................................................................................................ 15

**Rules**

Fed. R. Civ. P. 56 .......................................................................................................... 1, 3

-vi-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, November 19, 2020 at 8:00 a.m., Courtroom 12 at the United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102 before the Honorable William H. Alsup, Plaintiff Tiffany Britt ("Plaintiff"), on behalf of herself and the putative Class members, will and hereby does move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's Third Cause of Action for declaratory relief. Specifically, Plaintiff requests the Court declare as a matter of law that Defendant ContextLogic Inc. cannot compel Plaintiff and any Class member to arbitration, because Defendant's purported Terms of Service, within which the arbitration provision is found, are unenforceable due to lack of mutual assent, and/or alternatively because the Terms of Service and arbitration provision are unconscionable and unenforceable as a matter of law.

This motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of William Hogg, the Declaration of Tiffany Britt, all records and pleadings on file in this action, and all other matters that the Court may properly consider.

## ISSUED PRESENTED

Plaintiff moves for partial summary judgment as to her Third Cause of Action, which seeks declaratory relief on a purely legal and factually undisputed issue of contract formation regarding arbitration. Plaintiff respectfully requests the Court declare as a matter of law, consistent with Judge Donato's prior ruling in *Motley v. ContextLogic, Inc.*, that Defendant cannot prove that Plaintiff and the putative Class members mutually assented to the Terms of Service and the arbitration provision found therein based on the fundamental and undisputed nature of how that website and its derivative mobile applications operate, and therefore Plaintiff and putative Class members are not bound by the arbitration provision within those Terms of Service.

Alternatively, if the Court finds there is a factual dispute with respect to the mutual assent issue, Plaintiff respectfully requests the Court declare that Defendant's Terms of Service and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

arbitration provision are unenforceable as a matter of law because they are unconscionable.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This Motion requests the Court rule that Defendant may not compel arbitration in this matter based upon the Terms of Service found on Defendant's website, Wish.com. In light of the undisputed evidence pleaded and adduced, Defendant will not be able to sustain its burden to show that this action should be compelled to arbitration.

Plaintiff filed the present class action pursuant to Rule 23 against Defendant on June 29, 2020, to vindicate important consumer protection rights under California law, including the Consumer Legal Remedies Act ("CLRA") and the Unfair Competition Law ("UCL"), related to Defendant's participation in the sale of dangerous contact lenses without a prescription through its e-commerce website, Wish.com and its derivative mobile applications. *See* Dkt. 1; Dkt. 24. Plaintiff's Third Cause of Action requests the Court declare as a matter of law that either (1) Defendant cannot prove that Plaintiff and any of the Class members assented to the Terms of Service and the arbitration provision within that are found on Defendant's website, Wish.com, and/or (2) that the Terms of Service and arbitration provision are unenforceable because they are procedurally and substantively unconscionable.

These issues are ripe for resolution because there is no dispute over the salient facts related to contract formation, or lack thereof. Defendant bears the burden of proving the existence and enforceability of an arbitration agreement. As a matter of law, fact, and common sense, Defendant is unable to do so. Accordingly, Plaintiff requests the Court rule in favor of Plaintiff and similarly-situated class members on Plaintiff's Third Cause of Action for declaratory relief and hold that Defendant may not compel Plaintiff and the putative Class members to arbitration.

**II.     LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard[.]" *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks and citation omitted); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration . . . ."); *Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 Fed. Appx. 621, 623 (9th Cir. 2013) (reversing an order compelling arbitration when opposing party had been afforded no opportunity to present evidence and argument).

The party opposing arbitration receives the benefit of any reasonable doubts, and the court draws reasonable inferences in that party's favor; only when there are no genuine disputes of material fact calling into question the arbitration agreement's existence and applicability may the court compel arbitration. *Cross v. Nat'l Union Fire Ins. Co.*, No. 2:19-cv-00787-KJM-DB, 2019 U.S. Dist. LEXIS 208356, at *10 (E.D. Cal. Dec. 2, 2019).

## III.   FACTUAL BACKGROUND

### A.  Mutual assent.

There is no dispute over the salient facts at issue regarding Wish.com's Terms of Service and Plaintiff's (as well as any Class members') use of the website or its derivative mobile applications. Defendant operates Wish.com, which is one of the fastest-growing e-commerce websites in the United States. Plaintiff registered as a Wish.com user in or around March 2016. *See* Declaration of Tiffany Britt. As Wish.com existed in 2016, Wish.com requires users to log-in using an email address and password. The way in which Wish.com's Terms of Services operated through at least November 2018 was as a "browsewrap" agreement, where Wish.com's Terms of Service were accessible via a hyperlink on the bottom of Wish.com's web pages. There is no dispute that Plaintiff created an account and accessed Wish.com numerous times from March 2016 to November 2018, mostly through one of Wish.com's mobile applications. *Id.*

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

1    Judge Donato has previously ruled that the way in which Wish.com operated during this time

2    period failed to constitute evidence of mutual assent to the Terms of Service. *See Motley v.*

3    *ContextLogic, Inc.*, No. 3:18-cv-02117-JD, 2018 U.S. Dist. LEXIS 192447, at \*4-5 (N.D. Cal. Nov.

4    9, 2018) ("These facts put ContextLogic's screens squarely in the domain of the 'browsewrap

5    agreement' for purposes of determining formation and mutual assent. . . . An agreement to arbitrate

6    cannot be found on this record."). Judge Donato found, analyzing the same website for which Plaintiff

7    seeks declaratory relief here, that Defendant could not prove the plaintiff mutually assented to the

8    Terms of Service because Wish.com "did not provide any notice that merely using the website would

9    be deemed acceptance of the terms of service. The only thing ContextLogic's screens featured was an

10   unadorned hyperlink to the terms of service." *Id.* at \*4.

11   A short time following Judge Donato's ruling in *Motley*, Defendant cosmetically revised its

12   log in screens to make a bare-minimum-effort attempt at forcing its inconspicuous Terms of Service

13   on unsuspecting consumers who visit Wish.com. Defendant made a slight cosmetic change to its log-

14   in screen, including a "warning" at the bottom right corner of the webpage in small, light gray-colored

15   font on top of a white background as follows: "By clicking 'Login' . . . you agree to the Wish Terms

16   of Use and Privacy Policy." *See* Declaration of William Hogg, Exhibits A and C. This purported

17   "warning" does not alert consumers that they may be waiving their legal rights or that consumers may

18   be agreeing to limitations of liability if they proceed to log in. *Id.* Even after making these cosmetic

19   changes to its website, given the inconspicuous formatting and overly-cluttered visual nature of the

20   overall webpage, consumers like Plaintiff do not to see, read, or knowingly consent to these Terms of

21   Service simply by logging in. *See* Britt Decl.

22   Even after these changes, Plaintiff (as well as any other reasonable consumer) never saw,

23   noticed, reviewed, or agreed to the Terms of Service. *Id.*

24   **A.  Unconscionability**

25   The Terms of Service represent a non-negotiable contract of adhesion, drafted by a more

26   sophisticated party, and were inconspicuously presented to consumers in a barely-visible hyperlink.

27

28

*Id.* The Terms of Service also include provisions that severely limit consumers' potential claims and damages, truncate the statute of limitations to one year, impose undue costs on consumers, and attempt to deprive consumers of statutory and representative rights to vindicate important public policy aims.

Specifically, the arbitration provision is found under Section 24 of the Terms of Service. *See* Hogg Decl., Exhibit B. The provision requires a claimant to send a letter requesting arbitration and describing their claim to Defendant's registered agent for service. *Id.* at Sec. 24.2.2. The provision further affords Defendant the right to pick the pool of potential arbitrators. *Id.* The provision provides no mechanism for Plaintiff to contest the "neutrality" of Defendant's chosen pool. *Id.*

Defendant includes a long list of "arbitrable claims," nearly all of which are claims that a consumer might bring against Defendant. That provision specifically exempts from arbitration a group of claims related to "disagreements or claims concerning patents, copyrights, moral rights, trademarks, and trade secrets and claims of piracy or unauthorized use of intellectual property." *Id.* at Sec. 24.1.

Defendant imposes the arbitration filing fees up to the cost of filing a lawsuit on consumers who seek arbitration. *Id.* at Sec. 24.2.3. Defendant also attempts to force consumers to be "responsible for all other additional costs . . . including, without limitation, attorney's fees and expert witness costs unless ContextLogic is specifically required to pay such fees under applicable law." *Id.*

To put the fee requirement in context, Defendant further seeks to prohibit any type of "class, consolidated, or representative proceeding." *Id.* at Sec. 24.10.1. This provision seeks waiver of the statutory right to institute class action proceedings with respect to the CLRA, and also includes a waiver of any claims for injunctive or equitable relief in a representative action. This means that, if these terms are valid, then each individual consumer would be required to pay separate filing fees to attend arbitration, even if their individual claim does not exceed that amount.

Various other provisions of the Terms of Service work in concert with this arbitration provision. For example, the Terms of Service also include a cap on potential damages of either $100 or the amount spent by the consumer on Wish.com within the 12 months preceding the claim, whichever is greater. *Id.* at Sec. 21.4. Defendant also attempts to truncate all potential limitations

periods to "one (1) year after the cause of action accrues." *Id.* at Sec. 23.6. Defendant also prohibits consumers from assigning, delegating, or transferring their rights without Defendant's prior written consent, but reserves for itself such a right to transfer without the consumer's consent. *Id.* at Sec. 23.2. Defendant further attempts to limit their potential liability "to the fullest extent allowed by applicable law," to preclude any action based on tort, contract, strict liability, or otherwise, and attempts to denounce liability for "any indirect, special, punitive, incidental, or consequential damages of any kind[.]" *Id.* at Sec. 21.1.

In conjunction with the arbitration provision, if a consumer is able to bring any claim against Defendant not covered by the broad limitations on liability, the consumer (1) may not assign their claim to anyone without Defendant's prior written consent, (2) would be forced to pay filing fees in the range of $400 to $450, (3) for a claim that is capped at $100, (4) may not seek equitable relief in any representative capacity, (5) may not seek injunctive relief at all, and (6) must bring their claim within one year of its accrual regardless if the law provides for a longer limitations period.

## IV.   ARGUMENT AND AUTHORITIES

### A.   As a matter of issue preclusion, Plaintiff never assented to or agreed to the Terms of Service as they existed before November 2018.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013).

Whether a contract exists is determined according to "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under "basic principles of California contract law," the "essential elements for a contract are (1) 'parties capable of contracting,' (2) their 'consent,' (3) a 'lawful object,' and (4) 'sufficient cause or consideration.'" *Norcia v. Samsung Tel. America, LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting Cal. Civ. Code § 1550). Of "paramount consideration" to the analyses is "the parties' objective intention at the time of contracting." *Porreco v. Red Top RV Center*, 216 Cal. App. 3d 113, 119 (1989).

In determining whether Defendant can prove these essential elements, "[t]he district court . . .

1    should give to the party [opposing arbitration] the benefit of all reasonable doubts and inferences that

2    may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th

3    Cir. 1991). "If there is doubt as to whether such an agreement exists," Defendant cannot carry its

4    burden and thus no contract can be found. *Id.*

5         In *Motley v. ContextLogic, Inc.*, Judge Donato found that Defendant was unable to prove that

6    a plaintiff assented to the Terms of Service based upon Wish.com's fundamental website operation:

7             The touchstone for the formation question is whether [Plaintiff] and
               ContextLogic mutually consented to arbitration in lieu of going to court.
8             *Norcia*, 845 F.3d at 1284; *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d
               1171, 1175 (9th Cir. 2014). They did not. The Court will assume for
9             present purposes that [Plaintiff] accessed all of the online screens that
               ContextLogic relies upon. Even so, **the screens fall far short of**
10            **evidencing an assent to arbitration**. None of them presented the
               specifics of Wish.com's terms of service or required [Plaintiff] to
11            review the terms in conjunction with a request for agreement or
               acceptance. *See In Re Facebook Biometric Info. Privacy Litig.*, 185 F.
12            Supp. 3d 1155, 1165 (N.D. Cal. 2016). None of the screens asked
               [Plaintiff] to click the equivalent of a "Sign Up" box of any sort that
13            might indicate acceptance of the terms of service. *Id.* at 1166. **The**
               **screens also did not provide any notice that merely using the website**
14            **would be deemed acceptance of the terms of service** The only thing
               ContextLogic's screens featured was an unadorned hyperlink to the
15            terms of service.

16            These facts put ContextLogic's screens squarely in the domain of the
               "browsewrap agreement" for purposes of determining formation and
17            mutual assent. Browsewrap agreements are properly viewed with
               skepticism because they purport to create binding contracts on terms a
18            user is not required to review, and in the absence of any affirmative
               manifestation of agreement by the user. *Id.* at 1165. . . .
19

20            An agreement to arbitrate cannot be found on this record.

21   2018 U.S. Dist. LEXIS 192447 at *3-4 (emphases added).

22        In light of Judge Donato's ruling, Defendant will not be able to sustain its burden to oppose

23   summary judgment on this narrow issue. This is true at the very least for Plaintiff and those class

24   members who used Wish.com before Defendant made minor cosmetic changes to its website in

25   November 2018, "not long after the filing of the *Motley* lawsuit[.]" *See* Dkt. 30 at 5. Moreover, *Motley*

26   has preclusive effect on Defendant because that opinion decided identical issues of fact and law in that

27   prior lawsuit involving Wish.com's Terms of Service.

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

1    "Issue preclusion, also known as collateral estoppel, 'bars the relitigation of issues actually

2    adjudicated in previous litigation.'" *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting

3    *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992)). For issue preclusion to apply, four

4    conditions must be met: "(1) the issue at stake was identical in both proceedings; (2) the issue was

5    actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to

6    litigate the issue; and (4) the issue was necessary to decide the merits." *Id.* (citing *Oyeniran v. Holder*,

7    672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012); *Howard v. City of Coos Bay*, 871 F.3d

8    1032, 1041 (9th Cir. 2017)).

9    Here, the issue of mutual assent is identical between *Motley* and the present action. That issue

10   was actually litigated and decided in the *Motley* case, there was full and fair opportunity to litigate the

11   issue, and the issue was necessary to decide the merits of ContextLogic's motion to compel arbitration.

12   All of the conditions are met here, and *Motley* therefore has preclusive effect on Defendant at least

13   through the time period until Defendant made cosmetic changes to Wish.com's log in screen in 2018.

14   Moreover, since *Motley*'s ruling was based on the way in which Wish.com operated as a

15   "browsewrap agreement" website, and had nothing to do with how often the plaintiff accessed the

16   website, any different "evidence" that Defendant might put forth about how often Plaintiff visited or

17   viewed Wish.com's web pages or how many Wish.com accounts Plaintiff may have created is wholly

18   immaterial and irrelevant to the question of mutual assent. *Motley*, 2018 U.S. Dist. LEXIS 192447, at

19   *3. As a matter of issue preclusion, Defendant cannot demonstrate that Plaintiff or any putative Class

20   member assented to the Terms of Service at least through the moment in November 2018 when

21   Defendant cosmetically changed its log in screens.

22   Accordingly,  in light of the facts and evidence presented by Plaintiff Britt, whose experience

23   is indistinguishable from the facts of *Motley*, Plaintiff Britt and putative Class members are entitled to

24   partial summary judgment on Plaintiff's Third Cause of Action because Wish.com cannot prove the

25   required element of mutual assent to show the creation of a contract.

26   Additionally, the Court should rule as a matter of law that Defendant is precluded from

27

28

1  asserting that Plaintiff or any Class member assented to the Terms of Service prior to the change that

2  occurred in 2018. And as such, Plaintiff's Third Cause of Action must be granted to such extent.

3          **B.**       **Defendant's cosmetic changes still do not provide evidence of mutual assent.**

4        Contracts formed on the internet come primarily in two flavors: "clickwrap" or "click-through"

5  agreements, in which website users are required to click on an "I agree" box after being presented with

6  a list of terms and conditions of use; and "browsewrap" agreements, where a website's terms and

7  conditions of use are generally posted on the website via a hyperlink at the bottom of the screen.

8  *Nguyen*, 763 F.3d at 1175-76 (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 428-30 (2d Cir.

9  2004)).

10        The cosmetic change made by Defendant following *Motley* attempted to transform Wish.com

11  from a "browsewrap agreement" into a kind of "sign-in wrap," which is a hybrid between a clickwrap

12  agreement and a browsewrap agreement. *See, e.g., Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 399-

13  401 (E.D.N.Y. 2015). A "sign-in wrap" type of agreement "does not require the user to click a box

14  showing acceptance of the terms of use in order to continue, but rather [attempts to notify] the user of

15  the existence and applicability of the website's terms of use when proceeding through the website's

16  sign-in or login process." *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK)

17  (KHP), 2017 U.S. Dist. LEXIS 192814, at *7 (S.D.N.Y. Nov. 20, 2017) (citing *Berkson*, 97 F. Supp.

18  3d at 399).

19        Defendant's cosmetic changes, however, still do not suffice to constitute evidence of mutual

20  assent or proper notice. Notably, Defendant's change does nothing to meaningfully address one of the

21  main points identified in the *Motley* decision: that the burden is on website owners to put users on

22  notice of the terms to which they wish to bind them, and not on consumers to "ferret out hyperlinks to

23  terms and conditions to which they have no reason to suspect they will be bound." *Motley*, 2018 U.S.

24  Dist. LEXIS 192447, at *5 (citing *Nguyen*, 763 F.3d at 1179). Defendant's cosmetic changes were

25  largely inconspicuous, and do not alert consumers that logging in to Wish.com will potentially alter

26  their legal rights in substantial and prejudicial ways. *See* Britt Decl. Accordingly, even with the

27  changes made to Wish.com following *Motley*, Defendant still is unable to prove that its "warning"

28

9

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

constitutes proper notice to consumers, much less that consumers even see such notice. As such, Defendant cannot prove Plaintiff or any putative Class member assented to the Terms of Service.

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen*, 763 F.3d at 1175. Thus, companies like Defendant that seek to enforce the terms of an online take-it-or-leave-it contract bear the burden of establishing, on undisputed facts, that the provisions of the contract were clearly communicated and accepted. *Id.* (explaining that the "onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," for "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound"). Determining "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms" is "a fact-intensive inquiry," *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034-35 (7th Cir. 2016), which "depends heavily" on "the design and content" of the relevant webpages or mobile-phone applications. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016); *see also Nguyen*, 763 F.3d at 1177-78.

Based on the Terms of Service as Defendant presented them on Wish.com and its derivative mobile platforms after making the cosmetic changes in November 2018, Defendant still cannot make such a showing. The only change made to Wish.com after *Motley* was the addition of a "warning" on the log-in page as follows: "By clicking 'Login', 'Facebook' or 'Google' you agree to the Wish Terms of Use and Privacy Policy." *See* Dkt. 24 at ¶ 81. This text is included in tiny, light gray-colored font on a white background, is not capitalized or bolded, and is visibly difficult to see. *Id.*; *see also* Hogg Decl., Exhibits A and C.

That is not nearly sufficient to establish proper visible notice for purposes of mutual assent. As numerous courts have held, hyperlinks to contractual terms "appear[ing] in smaller font" than other text on the screen, and which are "not bold, capitalized, or conspicuous in light of the whole webpage," fail to adequately notify visitors of the terms to which the hyperlinked text directs. *See Nicosia*, 834

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

F.33d at 236-37; *see also, e.g., Berkson*, 97 F. Supp. at 404 (holding a "terms of use" hyperlink "insufficient to give adequate notice" because it was "not in large font, all caps, or in bold"); *Cullinane v. Uber Technologies, Inc.*, 893 F.3d 53, 62-64 (1st Cir. 2018). Because the design and content of Wish.com's website fail to provide clear and conspicuous notice of the purported contractual terms, they do not suffice to establish Plaintiff's assent.

Putting aside that this text is barely visible based on its size and font color, it still does not require the user to review the Terms of Service, and does not inform the reader that the Terms of Service significantly and substantially alters the user's legal rights. Arbitration is not mentioned. Class waiver is not mentioned. Caps on damages are not mentioned. Limitations of liability are not mentioned. *See* Hogg Decl., Exhibit A. Even assuming a visitor to Wish.com saw this difficult-to-see "warning" in the bottom corner of the webpage, the hyperlink itself does not put users on notice that the Terms of Service will curtail their legal rights in any meaningful way, or are anything other than informational. Indeed, no substantive warnings appear at all until *after* a user clicks on the hyperlink and goes to an entirely different webpage. *See, e.g., Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220-21 (9th Cir. 2019) ("courts will not enforce agreements where the terms are 'buried at the bottom of the page[]' . . . Similarly, courts decline to enforce agreements where the terms are available only if users scroll to a different screen[.]" (citing cases))

One of Judge Donato's primary concerns in *Motley* was that Wish.com's website failed to "present[] the specifics of Wish.com's terms of service" and did not require the plaintiff to review the terms in conjunction with a request for agreement or acceptance. *Motley*, 2018 U.S. Dist. LEXIS 192447, at *3. The slight cosmetic changes made by Defendant do nothing to alleviate these concerns.

*Bernardino v. Barnes & Noble* is instructive here as a comparison. In *Bernardino*, Barnes & Noble's website had previously faced the same problem that Defendant faced in *Motley*: it was determined to be a "browsewrap" agreement that failed to demonstrate mutual assent. *See Bernardino*, 2017 U.S. Dist. LEXIS 192814, at *9-11. After the Ninth Circuit's decision in *Nguyen*, Barnes & Noble updated their website to operate as a "sign-in wrap" as opposed to a "browsewrap" agreement.

1     *Id.* at *12.

2         In so doing, Barnes & Noble added language immediately below the "Sign In or Continue As

3 Guest" language on the website that informs customers "By signing in you are agreeing to our Terms

4 of Use and our Privacy Policy." *Id.* Barnes & Noble also changed their "Submit Order" page to add

5 similar language when a customer completes their purchase. *Id.* The court spent considerable time

6 focusing on the plaintiff's sophistication, education, and access to an attorney. *Id.* at *15-16. The court

7 also noted that the arbitration provision was reasonably conspicuous, noting that "the design of the

8 screen on which the hyperlink to its terms of service could be found, as well as language about the

9 hyperlinked terms of service on that same screen." *Id.* at *25. Of importance were whether: the screen

10 was "uncluttered", the text alerting the user to the existence of terms of use appeared directly below

11 the registration button, the hyperlink was easily located and did not need to be searched for, that text

12 was itself a "clear prompt" or suggestion to read the terms, and the notice to the terms of use was

13 temporally connected to an action by the user, meaning that the terms were provided simultaneous to

14 the customer action. *Id.* at *25-26 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78-79 (2d Cir.

15 2017)).

16         In short, *Bernardino* stands for the proposition that in order to be a valid "sign-in wrap"

17 agreement, the Terms of Service must be visible, noticeable, suggest they be read, and put the user on

18 notice that signing in to the website will form a binding contract. Under these standards, Defendant's

19 Terms of Service fail to pass muster. The "sign-in wrap" language is small, difficult to read, and does

20 not prompt the user to read the terms before logging in. But more importantly, Wish.com's website is

21 anything but "uncluttered," which draws the user's eyes *away* from the supposedly "notifying"

22 language. A snapshot of the Wish.com home page as of September 24, 2020 reveals that Wish.com is

23 more akin to a Vegas-styled casino than an uncluttered screen where the user can be reasonably

24 expected to notice tiny, light gray font on a white background:

25 / / /

26 / / /

27

28

12

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA



*See* Hogg Decl., Ex. A (available at: https://www.wish.com/, last visited Oct. 9, 2020).

The brightly-colored and alluring images of product advertisements on the left side of the screen scroll up and down continuously, like a slow-moving slot machine. *Id.* The same feature appears on Defendant's mobile-based applications, such as Wish and Cute. The main difference with those applications is that the "sign-in wrap" is at the very bottom of the screen in much smaller font size, and the images scroll from right-to-left at the top of the screen. *Id.*, Exhibit C. And with those mobile applications, the user need only log in once—after that point, the user is not even prompted to log in before they can access the mobile applications.

Far from the clean and un-cluttered webpage at issue in *Bernardino*, the Wish.com home page is chock full of distracting content and advertisements, and is more akin to the website at issue in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016). In *Nicosia*, the Second Circuit examined an order page to determine if it put a consumer on constructive notice of Amazon's "Conditions of Use," which contained an arbitration clause. *Id.* at 233-38. The Amazon order page at issue in that case was far less busy and distracting than Wish.com's website. *Id.* at 240-41 (Addendum B). Even with a webpage that did not include bright, colorful, and continuously scrolling images to distract the user, the Second Circuit still held that they were "not convinced that notice was sufficient as a matter

of Washington law." *Id.* at 236. The court highlighted the salient fact that "unlike typical 'clickwrap' agreements, clicking 'Place your order' does not specifically manifest assent to the additional terms, for the purchaser is not specifically asked whether she agrees or to say 'I agree.'" *Id.* (citations omitted). Moreover, the notice message itself "[was] not bold, capitalized, or conspicuous in light of the whole webpage." *Id.* at 237 (citations omitted); *see also Nguyen*, 763 F.3d at 1179 ("[E]ven close proximity of the hyperlink to relevant buttons users must click on -- without more -- is insufficient to give rise to constructive notice.").

> Although it is impossible to say with certainty based on the record, there appear to be between fifteen and twenty-five links on the Order Page, and various text is displayed in at least four font sizes and six colors (blue, yellow, green, red, orange, and black), alongside multiple buttons and promotional advertisements. Further, the presence of customers' personal address, credit card information, shipping options, and purchase summary are sufficiently distracting so as to temper whatever effect the notification has. *See Nguyen*, 763 F.3d at 1179 ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound.").

*Nicosia*, 834 F.3d at 237.

In contrast with *Bernardino* and *Nicosia*, Defendant is unable to show that a user would notice the "sign-in wrap" language on Wish.com or its mobile applications, especially where the screen is overly-cluttered and there are visual features that draw the users' attention *away* from the notice.

At least one trial court has already noted the ever-shifting and difficult analysis that these types of web pages force upon judges. As Judge Karnow in the Superior Court for San Francisco County has noted:

> There is a "breadth of the range of technological savvy of online" users. *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 867 (2016), *quoting Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). And in the internet context, technologies shift rapidly. These considerations should give us pause when ascribing certain understandings to our judge-made 'reasonably prudent user'. For example, what looks like a hyperlink changes from time to time. [] And the browsewrap/clickwrap dichotomy is dated, and it is unfortunate. As the balance of this order notes, there are material distinction to be made within these categories, and indeed in an effort to capture some distinctions we now also have the "hybrid between a clickwrap and a

browsewrap agreement." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016); *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 WL 3492110, at *7 (N.D. Cal. Aug. 15,2017) (terms "are neither a 'true browsewrap' agreement nor a 'pure-form clickwrap agreement'"). *See also,* Stephen Y. Chow, "A Snapshot of Online Contracting Two Decades After *Procd v. Zeidenberg*," 73 BUS. LAW. 267, 268 (2018) (cases discussing "scrollwrap" and "sign-in-wrap"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) ("modified clickwrap"); Heather Daiza, "Wrap Contracts: How They Can Work Better for Businesses and Consumers," 54 CAL. W. L. REV. 201, 215 (2017) ("Tapwraps are the same as clickwraps, but the consumer taps to agree"). That's a lot of wraps. Disputes over taxonomy may not be fruitful: it would be nice if we abandoned the '-wrap' nomenclature altogether (except for shrink-wrap agreements, which are actually shrink-wrapped).

*Talbot v. Lyft, Inc.*, Case No. CGC-18-566392, 2018 Cal. Super. LEXIS 6553, at *5 n.5 (San Francisco Sup. Ct., Dec. 21, 2018).

As Judge Karnow astutely observed, "[t]he fictional 'reasonable person' may be held by a court to know e.g., terms of service, but this isn't usually true in the real world. For example, in the social media context (admittedly not that here) **a study confirmed what readers surely suspect, which is that almost no one reads the terms of services and privacy policies.**[] In the study's use of a fictitious site, **98% missed the 'gotcha clauses' by which the user agreed to provide his or her first born child in return for the service**." *Id.* at *5-6 (emphasis added) (citing Stacy-Ann Elvy, "Contracting in the Age of the Internet of Things: Article 2 of the UCC and Beyond," 44 HOFSTRA L. REV. 839 (2016); Jonathan Obar et al., "The Biggest Lie on the Internet: Ignoring the Privacy Policies and Terms of Service Policies of Social Networking Services," TPRC 44: The 44th Research Conference on Communication, Information and Internet Policy, 2016 (June 1, 2018), available at https://ssrn.com/abstract=K2757465).

Even in the ever-changing online and mobile application context, Defendant's Terms of Service are designed to be visually ignored in favor of the alluring images that pull the user's attention away from the supposed "notice," which is written in tiny, osbcured font that sits at the bottom corner of the website. Whether Plaintiff or any other user actually sees this "notice" is important in deciding whether Plaintiff assented to the Terms of Service. As the studies cited by Judge Karnow illustrate, virtually no users see or review the terms of service, even when the fate of their first born is at stake.

In terms of contract formation, the party to be bound has to know the document is a contract—as opposed to something else, such as a receipt or informational guidelines. *See Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 420 (1996); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 567 (9th Cir. 2014). Courts still insist on "conspicuous notice of the existence of contract terms and unambiguous manifestation of assent." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 865-66 (2016) (quotation marks omitted). Simply put, Defendant's website and mobile applications fall well short of constituting "conspicuous notice" and "unambiguous manifestation of assent."

The simple reality of user experiences with websites like Wish.com is that users, including Plaintiff and the putative Class members, do not see the "notice," do not read the Terms of Service, and use the website without knowing that Defendant has inserted hidden riders within the Terms of Service that severely alter the users' legal rights, including jury waivers, class waivers, arbitration and arbitration costs, and strict limitations of liability. Their use of Defendant's website does not unambiguously manifest their assent to the Terms of Service, and Defendant can offer no evidence otherwise aside from showing the number of times a given user has visited the website. That "number of visits" data, however, tells us nothing useful about whether a contract was actually formed.

Accordingly, the Court should find that even after Defendant made the cosmetic changes to its website and mobile applications in 2018, this too fails to provide evidence of mutual assent to the Terms of Service.

### C. Even if Plaintiff had assented to the Terms of Service, they are unconscionable and thus unenforceable as a matter of law.

There is no dispute of fact regarding the Terms of Service in substance and in how those Terms were presented to consumers like Plaintiff and Class members. As such, even if the Court were to find summary judgment premature as to the mutual assent issue, the issue of enforceability is still ripe for dispositive review.

Unconscionability is determined based on the unique factual situations of each case. *Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 644 (2010). Unconscionability has both a procedural and a substantive element, the former focusing on "oppression" or "surprise" due to

unequal bargaining power, the latter on "overly harsh" or "one-sided" results. *Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [] But they need not be present in the same degree. . . . [citations] In other words, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### 1. The Terms of Service are procedurally unconscionable.

As *Armendariz* put it, "Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].'" *Armendariz*, 24 Cal. 4th at 113; *accord, Subcontracting Concepts (CT), LLC v. De Melo*, 34 Cal. App. 5th 201, 210, 245 Cal. Rptr. 3d 838 (2019).

> [T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. … Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced (see *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817–818 [171 Cal. Rptr. 604, 623 P.2d 165]), contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching.' (*Id.*, at p. 818.)"

*Gentry v. Superior Court*, 42 Cal. 4th 443, 469, 64 Cal. Rptr. 3d 773, 165 P.3d 556 (2007).

Here, the Terms of Service were drafted by Defendant (the stronger party), without affording Plaintiff or Class members (the weaker parties) any opportunity to negotiate its terms. Indeed, the entire Terms of Service and arbitration provision were drafted by ContextLogic, a large, well-funded corporate entity with superior bargaining power, and unilaterally imposed upon Plaintiff and putative

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

Class members, who are lay consumers who generally lack familiarity with contract law. Defendant presented these Terms of Service on a take-it-or-leave-it basis via inconspicuous website hyperlinks. Such factual circumstances are, without more, sufficient to establish procedural unconscionability. *See Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 U.S. Dist. LEXIS 32634, at *26 (N.D. Cal. Mar. 14, 2016) ("Under California law, contracts of adhesion are procedurally unconscionable 'to at least some degree.'" (citation omitted)). Egregiously, Defendant fails to even "attach the arbitration rules" to the Terms of Service, thereby "den[ying] ]Plaintiff and Class members] 'a fair opportunity to review the full nature and extent of the non-binding conciliation and binding arbitration process to which [they] would be bound." *Vargas*, 2016 U.S. Dist. LEXIS 32634, at *29 (citing *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996-97 (9th Cir. 2010)).

In short, the Terms of Service and the purported arbitration provision constitute a hidden, unilaterally-drafted, adhesive contract that Defendant seeks to spring on unwitting consumers. Procedural unconscionability is high in this instance.

## 2. The Terms of Service are substantively unconscionable.

"Under California law [an agreement] is unenforceable if it is both procedurally and substantively unconscionable." *Pokorny*, 601 F.3d at 996. "[T]he core concern of unconscionability doctrine is the absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v Moreno*, 57 Cal. 4th 1109, 1145 (2013). "While both procedural and substantive unconscionability are required, 'they need not be present to the same degree.'" *Colvin v. NASDAQ OMX Group, Inc.*, No. 15-cv-02078-EMC, 2015 WL 675292, at *3 (N.D. Cal. Nov. 4, 2015) (quoting *Pokorny*, 601 F.3d at 996). "Instead, a sliding scale is applied, such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.*

The "substantive element of unconscionability focuses on overly hard or one-sided results." *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App .4th 571, 586, 61 Cal.Rptr.3d 344 (2007); *see also Magno*

1    *v. The College Network, Inc.*, 1 Cal. App. 5th 277, 288 (2016) ("Substantive unconscionability is

2    concerned not with a simple old-fashioned bargain, but with terms that are unreasonably favorable to

3    the more powerful party." (internal quotations omitted)). Furthermore, even if the evidence of

4    procedural unconscionability is limited, evidence of substantive unconscionability may be strong

5    enough to "tip the scale and render [an] arbitration provision unconscionable." *See Gatton*, Cal. App.

6    4th at 588.

7         Citing numerous cases, the California Supreme Court in *Kho* well defined substantive

8    unconscionability:

9             Substantive unconscionability examines the fairness of a contract's
10            terms. This analysis ensures that contracts, particularly contracts of
              adhesion, do not impose terms that have been variously described as
11            "overly harsh", "unduly oppressive", "so one-sided as to shock the
              conscience", or "unfairly one-sided". All of these formulations point to
12            the central idea that the unconscionability doctrine is concerned not
              with a simple old-fashioned bad bargain, but with terms that are
13            unreasonably favorable to the more powerful party. Unconscionable
              terms impair the integrity of the bargaining process or otherwise
14            contravene the public interest or public policy or attempt to
              impermissibly alter fundamental legal duties. They may include fine-
15            print terms, unreasonably or unexpectedly harsh terms regarding price
              or other central aspects of the transaction, and terms that undermine the
16            nondrafting party's reasonable expectations. These examples are
              illustrative, not exhaustive.

17
              Substantive terms that, in the abstract, might not support an
18            unconscionability finding take on greater weight when imposed by a
              procedure that is demonstrably oppressive. Although procedural
19            unconscionability alone does not invalidate a contract, its existence
              requires courts to closely scrutinize the substantive terms to  ensure
20            they are not manifestly unfair or one-sided. We hold that, given the
              substantial procedural unconscionability here, even a relatively low
21            degree of substantive unconscionability may suffice to render the
              agreement unenforceable.

22   *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129-130, 251 Cal. Rptr. 714, 447 P.3d 680 (2019) (internal

23   alterations, quotations, and citations omitted).

24                    **i.   The arbitration provision is wholly one-sided on its face.**

25        The arbitration provision at issue here is substantively unconscionable for several reasons.

26   First, the provision affords Defendant the right to pick the pool of potential arbitrators. *See, e.g.,*

27

28
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 924-25 (9th Cir. 2013). Second, it provides no mechanism for Plaintiff to contest the "neutrality" of Defendant's chosen pool. *See Sonic-Calabasas A, Inc.*, 311 P.3d at 207 ("an adhesive agreement that gives the employer the right to choose a biased arbitrator is unconscionable"). Third, Defendant has specifically exempted from arbitration a cherry-picked group of claims that only Defendant, and certainly not consumers such as Plaintiff, would ever actually bring. *See* Hogg Decl., Exhibit B (exempting only claims related to "actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents, or other intellectual property rights."). Such provisions are unconscionable under California law. *See Colvin*, 2015 WL 6735292, at *5; *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004); *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1007-08 (N.D. Cal. 2015). Finally, Plaintiff is prohibited from assigning, delegating, or transferring any of her rights or obligations under the Terms of Service without Defendant's prior written consent, yet Defendant is free to transfer, assign, or delegate any or all of its rights without Plaintiff's consent. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir. 2003). Despite all of these plainly one-sided provisions, Plaintiff is nonetheless forced to chip in half the costs of arbitration. *See, e.g., Capili*, 116 f. Supp. 3d at 1008.

The arbitration provision within these Terms of Service are permeated with quintessential examples of substantive unconscionability. "[N]o single provision [of which] the [Court] can strike or restrict in order to remove the unconscionable taint[.]" *Armendariz*, 24 Cal. 4th at 124. Accordingly, in the event the Court finds that Plaintiff assented to the Terms of Service, the Court should find the entire arbitration provision unconscionable and thus unenforceable. *See Ingle*, 328 F.3d at 1180.

If that were not enough, the following provisions of the Terms of Service decidedly illustrate that the whole agreement, including the arbitration provision within, is structured to benefit only Defendant. Defendant will seek to impose these various provisions in arbitration,[1] where such attempts would not be subject to judicial scrutiny. This further illustrates the one-sidedness of the arbitration provision within the greater context of the Terms of Service as a whole.

---

[1] *See* Hogg Decl. at ¶¶ 5-6.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA

**ii.  The Terms of Service seek to shorten all limitations period to one year.**

Section 23.6 of the Terms of Service imposes a shorter limitations period than is permitted by the statutes at issue here, the CLRA and the UCL. Section 23.6 reads as follows, in relevant part: "**Statute of Limitations** You agree that regardless of any statute or law to the contrary, any claim arising out of or related to the Services must commence within one (1) year after the cause of action accrues. Otherwise, such cause of action is permanently barred." *See* Hogg Decl., Exhibit B.

Courts have found that agreements which "impose a shorter limitations period than is permitted by statute may be unconscionable and deprive a plaintiff of the full range of statutory remedies – and thus, their substantive rights under the statute." *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 940 (N.D. Cal. 2018) (citing, e.g., *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002) (holding that a contractually-imposed one year limitations period deprived the plaintiff of the right to assert claims and therefore deprived the plaintiff of his full range of statutory remedies); *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1262 (9th Cir. 2005) (finding an agreement was substantively unconscionable where it required the plaintiff to "forgo essential and substantive procedural rights" based, in part, on a reduced limitation period)).

The CLRA carries a three-year limitations period. *See* Cal. Civ. Code § 1783. The UCL carries a four-year limitations period. Cal. Bus. & Prof. Code § 17208. Section 23.6 seeks to impermissibly truncate those generous limitations periods to a single year, which would deprive many Class members of their statutory remedies and substantive rights. That is a per se one-sided result.

**iii.  The Terms of Service seek to cap damages to $100 or the amounts paid by consumers within the 12-month period preceding the event giving rise to the legal claim at issue.**

Section 21.4 attempts to cap any damages against Defendant as not to exceed "the greater of (i) $100.00 or (ii) the amounts paid by [Plaintiff] to ContextLogic in connection with the services in the twelve (12) month period preceding the event on which your claim is based." *See* Hogg Decl., Exhibit B. Similar attempts to unilaterally impose caps on liability have been found substantively unconscionable. *See Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 824-26 (2010) ("As in *Little*, *Szetela* and *Saika*, the limitation of damages provision here is yet another version of a

1    'heads I win, tails you lose' [ ] clause that has met with uniform judicial opprobrium." (citing *Little v.*

2    *Auto Stiegler, Inc.*, 29 Cal. 4th 1064 (2003); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002);

3    *Saika v. Gold*, 49 Cal. App. 4th 1074 (1996)); *McKee v. Audible, Inc.*, No. 17-1941-GW(Ex), 2017

4    U.S. Dist. LEXIS 174278, at *40-41 (C.D. Cal. July 17, 2017) ("Plaintiff's argument concerning a

5    provision that caps [defendant's] total amount of potential[] liability at the amount of money a member

6    has spent in the previous year is problematic for Defendants. [ ] This is because that provision is wholly

7    one-sided and arbitrarily caps damages. [ ] The Court would find that this term is unconscionable and

8    sever that provision without disturbing the rest of the agreement." (citing *Zuver v. Airtouch*

9    *Communications*, 153 Wn.2d 293, 317-19, 103 P.3d 753 (2004)).

10        Section 21.4 arbitrarily caps damages and is wholly one-sided in Defendant's favor, and is

11    therefore substantively unconscionable.

12              **iv. Taken together with these other provisions that attempt to limit**
                   **Defendant's liability, the purported arbitration and class waiver**
13                 **constitutes a one-sided benefit in Defendant's favor.**

14        The purported arbitration provision found in Section 24.10 seeks to preclude class treatment

15    of any kind. *See* Hogg Decl., Exhibit B. Section 24.10 requires that any arbitration be resolved "in an

16    individual capacity, and not on behalf of, or as part of, any purported class, consolidated, or

17    representative proceeding." *Id.* This means, if the purported arbitration provision were enforceable, it

18    would force consumers to file individual arbitration demands. Context is important here: most items

19    listed for sale on Wish.com are small-dollar value items, generally between $1 and $20 each. The

20    liability cap discussed above limits damages to the greater of $100 or the total amount an individual

21    spends within the 12 months preceding the claim. In order to recover on a consumer protection claim

22    for the purchase of contact lenses (a relatively small dollar amount), Plaintiff would be forced to spend

23    hundreds of dollars (discussed in more detail below) to initiate and litigate her consumer protection

24    claim in arbitration, all on an individualized basis. The Class members would be forced to do the same.

25        This class action waiver within the purported arbitration provision is thus completely one-

26    sided, since consumers would have no monetary incentive to vindicate their rights in this context. The

27    class action waiver provision likewise frustrates the legislature's express intent that consumer actions

28

like this case be able to proceed as a class action. *See* Cal. Civ. Code § 1781 (stating that any consumer may bring an action on behalf of himself/herself as well as any other consumer who is similarly damaged under the CLRA for class certification).

> **v.    The arbitration provision imposes undue costs that would prevent consumers from vindicating their rights on an individualized basis.**

The arbitration provision also imposes undue costs. As described in Section 24.2.3, "[t]o the extent the filing fee for the arbitration exceeds the cost of filing a lawsuit, ContextLogic will pay the additional cost." *See* Hogg Decl., Ex. B. In the class action context, however, this would force consumers to bring individualized claims in arbitration and would force each consumer to pay, at minimum, costs up to the same cost of filing an individual lawsuit. The cost of filing an individualized, non-complex civil case in the Superior Court of California for San Francisco County is $450. The cost of filing a civil case in the Northern District of California is currently $400. This means that if a consumer wanted to dispute the $3.00 sale of contact lenses under a consumer protection statute, they would (1) be precluded from bringing the consumer protection claim on a class basis, and (2) would be forced to pay between $400 and $450 to litigate an individualized consumer protection claim. This leaves consumers with no viable recourse from an economic standpoint.

The CLRA contains a specific anti-waiver provision. Civil Code § 1751 states, in clear and unambiguous terms, that "[a]ny waiver by a consumer of the provisions of [the CLRA] is contrary to public policy and shall be unenforceable and void." The CLRA also contains a statutory right for consumers to bring class actions. Cal. Civ. Code § 1752. Not only does Defendant's class action waiver found within the arbitration provision run counter to the legislatively-espoused public policy underlying the CLRA's class action mechanism, but it would also impose a prohibitively expensive bar to bringing suit. It makes no financial sense to spend $400 to litigate an individualized $10 claim.

As the California Supreme Court held in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), this represents a waiver of the right to pursue *statutory* remedies, which is distinguished from a waiver of class *procedures*. *Id.* at 966. As such, even if the Court were inclined to send this case to arbitration, "invalidation of the [class] waiver will not [] interfere with any of arbitration's attributes." *Id.* This

class waiver provision is unduly one-sided, because it requires consumers to give up their substantive statutory rights purely for Defendant's benefit and leaves consumers with no viable recourse.

### vi. The class action waiver should be held unenforceable under California law because it violates public policy.

Plaintiff seeks monetary and injunctive relief on behalf of all Class members pursuant to the CLRA and UCL. Under California law, "a provision in any contract—even a contract that has no arbitration provision—that purports to waive, in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or the false advertising law is invalid and unenforceable under California law." *McGill*, 2 Cal. 5th at 962. Defendant's arbitration provision seeks to do just that, and is therefore unconscionable.

In *Blair v. Rent-A-Center, Inc*., 928 F.3d 819 (9th Cir. 2019), the Ninth Circuit struck down an Arbitration Provision containing two limits: (1) a prohibition on the arbitrator from awarding "relief that would affect [people] other than [the plaintiff]," and (2) a prohibition on "arbitrat[ing] as a Class, collective, mass, private attorney general, or *representative* action." *Blair*, 928 F.3d at 831 (emphasis added). The Blair court found that these prohibitions together "preclude[d] the arbitrator from awarding public injunctive relief," and thus violated California public policy. *Id.*

The same improper provisions found in *Blair* are present here. The Terms of Service seek to preclude representative actions in arbitration or outside of arbitration. *See* Hogg Decl., Exhibit B, at Sec. 24.10.1 ("ContextLogic and you agree to resolve any dispute in an individual capacity, and not on behalf of, or as part of, any purported class, consolidated, or *representative* proceeding" (emphasis added)) and Sec. 24.3 ("The arbitrator shall have the authority to award monetary damages and to grant any non-monetary remedy or relief *available to an individual* under applicable law, the arbitral forum's rules, and these Terms (including the Arbitration Agreement)." (emphasis added)). Taken together, these purported terms preclude an arbitrator from awarding public injunctive relief. Under *Blair*, such provisions violate California public policy and are therefore unenforceable.

Even if the Court strikes the class waiver provision and the costs provision, the remaining arbitration provision is likewise substantively unconscionable. For example, if a consumer wishes to

1  file a claim in small claims court, they would still be required to file on an individualized basis and

2  are not allowed to request "any type of equitable relief." *See* Hogg Decl., Exhibit B, at Sec. 24.2.5.

3  Further, Defendant retains to right to change the purported arbitration terms in any way. *Id*. at Sec.

4  24.7.2. And severability of any parts of the arbitration clause itself is "[s]ubject to" the class action

5  waiver section, which means that severability of any provisions is entirely dependent on whether the

6  class action waiver is valid. Taken together, these terms illustrate the purported arbitration and class

7  waiver provisions are grossly one-sided and favor Defendant at the expense of consumers.

8      The Court should therefore find that Defendant's purported arbitration agreement is

9  unenforceable, and find as a matter of law that Defendant's affirmative defense of arbitration must be

10  denied.

11  **V.     CONCLUSION**

12      For the reasons stated herein, Plaintiff respectfully requests the Court grant her Motion for

13  Partial Summary Judgment with respect to her Third Cause of Action, and find that (1) Plaintiff and

14  Class members never mutually assented to the arbitration provision within the Terms of Service,

15  and/or (2) the arbitration provision within the Terms of Service is unenforceable because it is

16  procedurally and substantively unconscionable. Plaintiff asks for such other and further relief to which

17  she may be entitled at law or in equity.

18

19                                        Respectfully submitted,

20  Date: October 14, 2020

21                                        */s/ William M. Hogg*
                                          Matthew S. Weiler
22                                        Ryan M. Hecht
                                          Peter B. Schneider
23                                        William M. Hogg
                                          SCHNEIDER WALLACE
24                                        COTTRELL KONECKY LLP

25                                        *Attorneys for Plaintiff and Class Members*

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court

3

for the United States District Court, Northern District of California, by using the Court's CM/ECF

4

system on October 14, 2020.

5

    I certify that all participants in the case are registered CM/ECF users and that service will be

6

accomplished by the Court's CM/ECF system.

7

8

9

                     */s/ William M. Hogg*
                     William M. Hogg

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
*Britt, et al. v. ContextLogic, Inc.*, Case No. 3:20-cv-04333-WHA