UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY BRITT,<br><br>        Plaintiff,<br><br>  v.<br><br>CONTEXTLOGIC, INC.,<br><br>        Defendant. | No. 3:20-cv-04333-WHA<br><br>**ORDER GRANTING PETITION TO COMPEL ARBITRATION, DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**INTRODUCTION**

In this putative class action for online consumer transactions, plaintiff brings claims under California's Consumer Legal Remedies Act and Unfair Competition Law alleging that defendant is deceptively and unlawfully functioning as an unlicensed distributor of contact lenses and failing to require purchasers to provide a prescription before purchasing contact lenses in violation of the Fairness to Contact Lens Consumers Act, 15. U.S.C. §§ 7601–7610. At issue is whether plaintiff must arbitrate her claims under the mandatory arbitration provision in defendant's terms of service. For the reasons that follow, defendant's petition to compel arbitration is **GRANTED**. Plaintiff's motion for partial summary judgment is **DENIED**.

**STATEMENT**

Defendant ContextLogic, Inc., "operates online marketplaces including Wish, Cute, Mama, Home and Geek" (Bhattacharjya Decl. ¶ 5). Each of defendant's marketplace platforms are available via web browser or mobile apps (*ibid.*). Through its platforms, defendant allows third parties "to set up stores that list and sell items to" consumers (*ibid.*). Plaintiff Tiffany Britt is an individual and a resident of California (First Amd. Compl. at ¶ 6). She alleges (*id.* at ¶ 3):

> The sale or distribution of contact lenses, even those that do not correct vision and are purely for cosmetic purposes ("plano contacts"), is prohibited by Federal and state law for persons and entities that are not licensed to sell, distribute, or facilitate the sale of contact lenses. Namely, it is prohibited for any person to offer contact lenses for sale without requiring the purchasers to present a valid prescription from a licensed medical professional. Defendant, through its online retail platforms, Wish.com and its various mobile phone applications, has sold and continues to offer contact lenses for sale without being licensed to sell or distribute contact lenses, and without requiring or even warning potential purchasers that a valid prescription is required. [¶] Plaintiff was one such unsuspecting consumer . . .

Plaintiff further alleges that defendant deceives consumers by representing that it prohibits the sale or listing for sale of contact lenses on its platforms (*id.* at ¶ 21). Perhaps incredibly, plaintiff alleges she reviewed and relied on defendant's prohibited product listings policy, which applies only to third-party sellers and is only accessible through the "Wish for Merchants" tab on the Wish.com website (*id.* at ¶ 21), while also maintaining that she was unaware of the terms of use which applied to her use of the Wish platforms.

The question now is whether plaintiff must be required to arbitrate her claims pursuant to the mandatory arbitration agreement in defendant's terms of use. Plaintiff seeks declaratory relief that the mandatory arbitration provision in defendant's terms of use does not bind plaintiff because she did not assent to them or, in the alternative, that the terms of use are unenforceable. Plaintiff refers in her complaint to Judge James Donato's decision in 2018 that defendant's log-in and sign-up screens did not give sufficient notice of the terms of use and, therefore, no agreement to arbitrate was formed. *Motley v. ContextLogic, Inc.*, 2018 WL 5906079. Plaintiff admits, however, that at least since that decision, defendant has changed the

log-in screen that appears on its Wish platform to appear — minus the red box around the notice language which box plaintiff added for emphasis — like this (First Amd. Compl. at ¶ 81):



Plaintiff argues that the addition of the notice language, appearing in the red box above, was not enough to give notice of the terms of use. Importantly, however, she does not say that she never interacted with the above screen when she "made contact lens purchases through Wish.com's website and/or mobile application at various times from January to June of 2019 via Wish.com's mobile phone application" (*id.* at ¶ 79). Thus, plaintiff implicitly concedes that when she made the contact lens purchases that are the subject of her complaint, she interacted with the above screen. Defendant confirms that the above log-in screen, minus the red box, is an accurate representation of the Wish.com log-in screen plaintiff would have used to log-in and make her contact lens purchases (Bhattacharjya Decl. at ¶ 21).

Plaintiff moves for partial summary judgment on the issue of her assent to the terms, asserting that she did not assent and, therefore, is not bound to them, and, even if the parties did form an agreement to arbitrate, it is unenforceable. Defendant opposes and petitions to compel arbitration.

A hearing was held on the motions. Reasonable and narrowly directed discovery on the issue of plaintiff's assent to the terms of use was permitted. All other merits-based discovery was stayed pending resolution of the motions. The parties were ordered to submit supplemental briefs incorporating their discovery findings.

Plaintiff deposed Atish Bhattacharjya, an employee of defendant, whose declaration formed the basis of defendant's petition to compel arbitration (Dkt. No. 52-1). Defendant deposed plaintiff (Dkt. No. 53-3). The parties filed supplemental briefs, oppositions, and replies, complete with exhibits and deposition transcripts. A second hearing was held on the arbitration question with the benefit of the discovery and supplemental briefs.

**ANALYSIS**

1. **CONTRACT FORMATION.**

The Federal Arbitration Act governs the petition to compel arbitration. 9 U.S.C. §§ 1 *et seq*. "The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). "In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Ibid.* (citation omitted).

Under California law, a valid contract requires the mutual consent of the parties. *Monster Energy Co. v. Schechter*, 7 Cal.5th 781, 789 (2019). "'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved.'" *Ibid.* (citations omitted).

4

"Where, as here, there is no evidence that the user had actual knowledge of the agreement, the validity of the [online] agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. Whether a user has inquiry notice of a[n] [online] agreement, in turn, depends on the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1177.

In *Lee v. Ticketmaster*, 817 Fed. App'x. 393 (9th Cir. 2020), our court of appeals held that the following sign-in page gave sufficient notice of the terms of use to form an agreement when the user signed in and used the service (*see* Dkt. No. 37-8):



5

1    In addition, in *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482 (9th Cir. 2020), our court of
2    appeals held that the following sign-in page gave sufficient notice of the terms of use to bind
3    the user when he clicked the "Sign In" button (*see Arena v. Intuit Inc.*, 444 F.Supp.3d 1086
4    (N.D.Cal. 2020) (Judge Charles R. Breyer)):



1    Two district judges in this district have found that similar screens gave sufficient notice
2 of the terms of the arbitration agreement to bind the user. *See Regan v. Pinger, Inc.*, 2021 WL
3 706465 (Judge Lucy H. Koh). Another example is *Peter v. DoorDash, Inc.*, 445 F.Supp.3d
4 580 (N.D.Cal. 2020) (Judge Jon S. Tigar), which determined the following sign-up screen gave
5 sufficient notice (Def.'s Notice of Motion and Motion to Compel Arb. and Stay; Mem. of
6 Points and Authorities at 14 (No. 4:19-cv-06098)):



7

Here, defendant bases its petition to compel arbitration on the declaration of Atish Bhattacharjya. Bhattacharjya declared (Bhattacharjya Decl. at ¶¶ 1, 2, 19):

> I am a Senior Product Manager at ContextLogic Inc. []. I make this declaration based on my personal knowledge, and where indicated, based on my review of ContextLogic's records kept and maintained in the ordinary course of business.
>
> I have worked at ContextLogic since April 2017. My responsibilities include managing a team of product managers who are responsible for developing and launching new features within the user interface of the ContextLogic mobile applications []. As a result of my responsibilities and role within ContextLogic, I am knowledgeable about the user interfaces of the Wish Platforms . . . as well as changes made to those interfaces over time. I have been personally involved in many of the changes made to the user interfaces of the Wish Platforms, including the changes discussed herein. I am also well versed in analyzing records of user interactions with the Wish Platforms, as well as sales-related records. In addition, I am knowledgeable about the Terms of Use that govern the use of the Wish Platforms.
>
> *         *         *
>
> ContextLogic's records show each time a User completes a Log In Screen and for each such occurrence, ContextLogic's records reflect (a) whether the IOS mobile app, Android mobile app, or a standard web browser were used, (b) whether the log in occurred on Wish, Cute, Mama, Home, or Geek, and (c) information about the device used, including a unique device identification number.

1    On December 22, 2018, plaintiff logged into the Apple IOS version of defendant's Wish
2    mobile application (Bhattacharjya Decl. ¶ 25). The screen she used to log-in appeared like this
3    (*id.* at 22, Exh. D):



Plaintiff used the "Facebook" button to sign-in as opposed to entering her email address and password (*id.* ¶ 27; *see* Britt Depo. 193:2–11). The words "Wish Terms of Use" appeared in blue and were hyperlinked to defendant's terms of use (Bhattacharjya Decl. ¶ 26). The terms of use included a broadly worded mandatory arbitration provision (*id.* ¶ 7, Exh. B). In January 2019, plaintiff purchased contact lenses again using the Apple IOS version of the Wish application (Britt Decl. ¶ 7; Bhattacharjya Decl. ¶ 28). On March 11, 2019, plaintiff logged-in

again using the same screen and clicked the "Facebook" button (Bhattacharjya Decl. ¶¶ 25, 27). In the same month, she made another purchase of contact lenses using the IOS version of the Wish app (Britt Decl. ¶ 8; Bhattacharjya Decl. ¶ 28).

Under *Ticketmaster* and *Intuit*, defendant's Wish sign-in screen served to put plaintiff on constructive notice of the terms of use, and when she logged-in in December 2018, she manifested her assent thereto. At the April 7 hearing, counsel for plaintiff conceded that if plaintiff was put on constructive notice, that notice would carry forward to plaintiff's future use of the Wish application. The concession is well taken. Thus, when plaintiff bought contact lenses on defendant's Wish application in January and March 2019 (Britt Decl. ¶¶ 7, 8; Bhattacharjya Decl. ¶ 28), she was bound by the terms of use, including the mandatory arbitration provision.

Plaintiff does not meaningfully contest the above facts. Instead, she tries to avoid the result by (1) denying that she was ever confronted or presented with the terms of use or that she agreed to them; (2) showing that a user might inadvertently cover up the portion of the screen with the terms of use or that the portion of the screen with the terms of use might not appear without needing to scroll down and that defendant's screens are cluttered because of the distracting, moving images of products; and (3) citing to decisions involving ostensibly similar facts.

*First*, plaintiff states that she has never been "presented with" the terms of service, nor "asked to agree or consent to" them, nor has she "ever agreed to" them, and she does not recall "ever having been presented with, notified of, or asked to agree or consent" to them (Britt Decl. ¶¶ 3–5). Crucially, however, she does not contest Bhattacharjya's testimony, based on defendant's records, that she logged into the Wish application using the above screen on December 22, 2018, and again on March 11, 2019. In fact, her declarations and deposition testimony do not contest any of Bhattacharjya's declaration or testimony; she corroborated his statements by, for example, testifying that she would use the "Facebook" button to sign-in as opposed to using her email and a password (Britt Depo. 193:2–9; Bhattacharjya Decl. ¶ 27). At most, then, plaintiff's testimony that she was never presented with defendant's terms of use

10

1   can be understood to mean that she was subjectively unaware of their existence on the screens
2   she viewed to use the Wish app and she subjectively had no intention that by logging-in, she
3   would be agreeing to those terms.  Because mutual assent is measured objectively, and because
4   it is undisputed that plaintiff signed-in to the Wish app using the above screen, there is no
5   genuine dispute that she objectively manifested her assent to the terms.

6   *Second*, during deposition of Bhattacharjya, plaintiff's counsel elicited testimony that it is
7   possible for a user to cover up the notice language on the Wish sign-in screen when the user
8   clicks one of the text entry boxes to enter her email or password, bringing up her keyboard like
9   this (Dkt. No. 52-1 at 78):



11

1    Plaintiff also submits the following image of defendant's "Geek" mobile app sign-up
2    screen; when viewed as intended, the product images at the top would be scrolling across the
3    screen (Bhattacharjya Depo. Exh. 6):



24    As plaintiff points out, there are three potential problems, in terms of constructive notice,
25    presented by these latter two screens.  The first is that if the notice language is covered up by
26    the user's keyboard when the user is entering her email address and password to sign-in, she
27    will not be able to see the notice language.  The second problem is that the notice language on
28    the latter screen refers generically to "*the* Terms of Use" (emphasis added), without identifying

whose terms of use the user is supposed to be agreeing to; a reasonable user might be confused, she says, about who she is supposedly forming an agreement with. The third problem is that the scrolling product images at the top of the "Geek" sign-up screen might be sufficiently distracting to destroy constructive notice.

This order need not resolve those issues. The problem of a user inadvertently covering up the notice language with her keyboard was not a problem for plaintiff because when she logged-in on December 22, 2018, and March 11, 2019, she used the "Facebook" option to sign-in, not the email and password entry boxes so her keyboard did not obstruct the notice (Bhattacharjya Decl. ¶ 27; *see* Britt Depo. 193:2–11). The second and third issues were not present for plaintiff either. The IOS version of the Wish mobile app plaintiff used to sign-in stated unambiguously, "By clicking 'Sign In' or Facebook or Google you agree to the *Wish* Terms of Use and Privacy Policy" (emphasis added). Nor were there any distracting product images scrolling across the top of the screen.

*Third*, plaintiff's references to case law are unavailing. Plaintiff cites to *Snow v. Eventbrite*, 2020 WL 6135990 (Judge William H. Orrick). In *Eventbrite*, Judge Orrick declined to compel arbitration in part because the screenshots Eventbrite produced were not dated to the period when the plaintiffs were using Eventbrite. Further, some of the screenshots Eventbrite submitted were potentially misleading because Eventbrite omitted the fact that the "Place Order" button remained in place while the user scrolled through the page and, therefore, a user could make a purchase without ever viewing the notice of the terms of service.

Neither of the evidentiary problems present in *Snow v. Eventbrite* are present here. Bhattacharjya testified specifically that the above screenshot of the sign-in screen for the Apple IOS version of defendant's Wish mobile app is an accurate representation of the screen plaintiff used when she logged-in on December 22, 2018, and March 11, 2019 (Bhattacharjya Decl. ¶¶ 22, Exh. D, 25). And none of defendant's evidence is misleading or contradictory, as was the case in *Eventbrite*. There, Judge Orrick stated that if not for those evidentiary problems, the defendant's sign-in wrap agreement would have been sufficient to give

constructive notice to the plaintiff. The sign-in wrap agreement there was in all material respects similar to the one here.

The notice in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), is distinguishable in two regards. *First*, the only evidence of constructive notice considered by the court of appeals in *Nicosia* was an order page. The court of appeals did not consider an equivalent to the log-in screen here. *Second*, just comparing the Wish sign-in screen here to the order page in *Nicosia*, they are distinguishable. The Wish sign-in screen presented the notice language close to the action that constituted assent, unlike the order page in *Nicosia* which presented the notice language near the top of the page. Furthermore, the *Nicosia* decision emphasized that "[t]here are numerous other links on the webpage, in several different colors, fonts, and locations, which generally obscure the message," and "there appear to be between fifteen and twenty-five links on the Order Page, and various text is displayed in at least four font sizes and six colors . . ." *Id.* at 237. In contrast, the Wish screen here had only two links, to defendant's terms of use and privacy policy, respectively, it was uncluttered, and presented the notice language in a conspicuous enough manner.

### 2. DELEGATION OF ARBITRABILITY.

"Unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*.'" *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (citation omitted). "[L]anguage 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Ibid.* (citation omitted). In *Uber Technologies*, our court of appeals held that language delegating "to the arbitrators the authority to decide issues relating to the 'enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.' . . . '[C]learly and unmistakably indicate[d] the parties' intent for the arbitrators to decide the threshold question of arbitrability.'" *Id.* at 1209 (citation and footnote omitted).

14

Here, the current version of defendant's terms of use, which governs here, provides (Bhattacharjya Decl. Exh. A at 24):

> The arbitrator, and not any federal, state or local court or agency shall have exclusive authority to resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable.

This language clearly and unmistakably delegates to the arbitrator the authority to decide the enforceability or validity of the arbitration agreement in defendant's terms of use. Plaintiff must make her unconscionability arguments to the arbitrator in the first instance.

## CONCLUSION

Therefore, plaintiff's motion for partial summary judgment is **DENIED**. Defendant's petition to compel arbitration is **GRANTED**. The Court will retain jurisdiction to enforce the award and, if defendant drags its feet in teeing up the arbitration, to re-activate this civil action. A further case management conference will be held at **11:00 A.M. ON OCTOBER 7, 2021.**

**IT IS SO ORDERED.**

Dated: April 9, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE